UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| | |
|---|---|
| JOHN FITZGERALD HANSON, ) | |
| ) | |
| Petitioner/Appellant, ) | **10th Cir. No. 25-7044** |
| ) | |
| v. ) | D.C. No. 6:25-cv-00081-RAW |
| ) | (E.D. Okla.) |
| CHRISTE QUICK, Warden, ) | |
| Oklahoma State Penitentiary, et. al., ) | **Death Penalty Case** |
| ) | |
| Respondents/Appellees. ) | |

## MOTION FOR STAY OF EXECUTION

John Fitzgerald Hanson, by and through his attorneys, moves this Court for a stay of execution. **Mr. Hanson's execution is set for Thursday, June 12, at 10:00 A.M.** *See Barefoot v. Estelle*, 463 U.S. 880, 889 (1983) ("Approving the execution of a defendant before his [petition] is decided on the merits would clearly be improper."); *see also Lonchar v. Thomas*, 517 U.S. 314, 320 (1996) (holding that a court may stay an execution if needed to resolve issues raised in initial petition).

Federal courts traditionally consider four factors in evaluating whether to grant a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009); *see also Glossip v. Gross*, 576 U.S. 863, 876

1

(2015) (stating plaintiff seeking preliminary injunction must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."); *Hill v. McDonough*, 547 U.S. 573, 584 (2006); *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004). Consideration of these factors here counsel a finding that a stay of execution is warranted.

**I.    Mr. Hanson is Likely to Succeed on the Merits.**

Mr. Hanson is likely to succeed on the merits of his claim. First, Mr. Hanson was improperly moved from USP Pollock to the Oklahoma State Penitentiary in clear violation of 18 U.S.C. § 3623. Because Mr. Hanson's federal life sentence had not yet expired, the Bureau of Prisons' action moving him to Oklahoma was an *ultra vires* act, entitling him to injunctive relief, as discussed in more detail in Mr. Hanson's Combined Motion for a Certificate of Appealability on Count One and Opening Brief on Counts Two and Four filed contemporaneously herewith.

In summary, the proper statutory interpretation of § 3623 makes clear that a federal prisoner in primary and physical custody of the BOP—like Mr. Hanson— must first reach the conclusion of their federal sentence before they can be transferred to a state detention facility. By blatantly ignoring the temporal requirement of § 3623, the BOP's transfer decision was *ultra vires*. Even though other § 3623 requirements vest the BOP with discretion, this Court has the power to

determine if the temporal requirement was met here because that is a condition precedent to BOP exercising its discretion. Also, as an Article III court, this Court has the power under the recent Supreme Court Decision in *Loper Bright v. Raimondo*, 603 U.S. 369 (2024), to review the actions of an executive branch official.

Second, Oklahoma violated Mr. Hanson's due process rights when it negligently failed to seek Mr. Hanson's transfer from federal prison to Oklahoma for over 16 years, from his state resentencing in 2006 until Oklahoma's first transfer request in 2022. During that time, even though Mr. Hanson was under a sentence of death in Oklahoma, the State of Oklahoma neglected to take any action to acquire primary or physical custody of Mr. Hanson. And after both Mr. Hanson's original trial in 2001 and his resentencing in 2006, Oklahoma willingly transported Mr. Hanson back to federal custody at its own expense even though it could have sought to keep him in Oklahoma state custody. *See*, *e.g.*, *Moody v. Holman*, 887 F.3d 1281 (11th Cir. 2018) (finding no error where Alabama kept federal prisoner in state custody following state capital sentence even though a writ provided that he would be returned to federal custody following state trial).

The due process clause of the Fourteenth Amendment requires that action by a state through any of its agencies must be consistent with the fundamental principles of liberty and justice. *Buchalter v. People of the State of New York*, 319 U.S. 427,

429 (1943). It exacts from the states a conception of fundamental justice. *Foster v. People of State of Illinois*, 332 U.S. 134, 136 (1947). This Court has held that a state may waive jurisdiction when its lack of pursuit or interest in a prisoner is so grossly negligent that it would be unequivocally inconsistent with fundamental principles of liberty and justice to require a legal sentence to be served in the aftermath of such action or inaction. *Blango v. Thornburgh*, 942 F.2d 1487, 1491 (10th Cir. 1991). Here, Oklahoma's inexplicable inaction constitutes such a due process violation.

For all the reasons presented above, Mr. Hanson has a substantial likelihood of success on the merits.

## II. Absent a Stay, Mr. Hanson Will Be Irreparably Harmed.

Denying a stay risks "foreclos[ing] . . . review," which constitutes "irreparable harm." *Garrison v. Hudson*, 468 U.S. 1301, 1302 (1984). Allowing the State to execute Mr. Hanson before proceedings have concluded will "effectively deprive this Court of jurisdiction." *Id*. A stay is generally warranted when, as here, mootness is likely to arise during the pendency of the litigation—as it will if Mr. Hanson is executed June 12, 2025. *See Chafin v. Chafin*, 568 U.S. 165, 178 (2013).

A stay in this case is necessary because otherwise Mr. Hanson will be executed in violation of federal law and the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. The harm is clear, serious, and irreversible. *See, e.g. Wainwright v. Booker*, 473 U.S. 935, 935 n.1 (1985) (Powell,

J., concurring) (stating that the requirement of irreparable harm if stay is not granted "*is necessarily present in capital cases*") (emphasis added).

**III.    Respondents/Appellees Will Be Unaffected by a Stay.**

Moreover, a stay of execution in this case will not substantially harm Respondents/Appellees. Mr. Hanson seeks merely to maintain the status quo until this action can be resolved on its merits.

There have been many delays, some lasting years and attributable to the State, on the road to Mr. Hanson's execution. As Judge Friot noted in the *Glossip* lethal injection litigation on May 5, 2020, at that point it had "been 1,625 days since the Attorney General said let's put this on hold so we can get our act together." *Glossip v. Chandler*, CIV-14-0665-F, (W.D. Okla. May 5, 2020), Transcript of Motion Hearing before Honorable Stephen P. Friot, at 25. Given that delay, Respondents/Appellees should not be heard to complain of a short delay to protect Mr. Hanson's constitutional rights. The several years the State waited to establish a new protocol undermines any argument regarding the purported urgency in proceeding with an execution before the Court has had an opportunity to evaluate Mr. Hanson's claims. *Osorio-Martinez v. Attorney Gen. of the U.S.*, 893 F.3d 153, 179 (3d Cir. 2018). The short stay sought here will ensure the State does not perform an unconstitutional execution, *see Gomez v. U.S. Dist. Ct. for N. Dist. of Cal.*, 966 F.2d 460, 462 (9th Cir. 1992) (Noonan, J., dissenting from grant of writ of mandate).

Maintaining the status quo is the very purpose of a stay. If the stay is granted and Mr. Hanson's legal claims ultimately fail, then the stay may be lifted, and the State can expeditiously proceed toward a new execution date. A stay of execution in this case will not substantially harm the Respondents/Appellees.

**IV.　A Stay of Execution Will Serve the Public Interest.**

The public interest is not served by executing someone before they have had a full and fair opportunity to avail themselves of legal process. The public interest lies in ensuring agencies act in accordance with the Constitution and federal law. *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). This interest is only heightened in the context of executions. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013). Indeed, "the public interest has never been and could never be served by rushing to judgment at the expense of a condemned inmate's constitutional rights." *In re Ohio Execution Protocol Litig.*, 840 F. Supp. 2d 1044, 1059 (S.D. Ohio 2012) (citation omitted).

The Supreme Court has confirmed that brief stays or injunctions are warranted to permit potentially meritorious claims to be adjudicated before prisoners are executed. *See Barr v. Roane*, 140 S. Ct. 353 (2019) (Alito, J., respecting the denial of stay or vacatur) ("[I]n light of what is at stake, it would be preferable for the District Court's decision to be reviewed on the merits by the Court of Appeals for

6

the District of Columbia Circuit before the executions are carried out."); *see also Barr v. Lee*, 140 S. Ct. 2590, 2593 (2020) (Sotomayor, J., dissenting) (noting that "because of the Court's rush to dispose of this litigation in an emergency posture, there will be no meaningful judicial review of the grave, fact-heavy challenges respondents bring").

## V. The All Writs Act

Further, this Court is empowered to grant the requested stay of execution pursuant to Title 28, United States Code, Section 1651(a), the All Writs Act, which provides:

> The Supreme Court and all courts established by Acts of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

The "all writs" authority of Section 1651 "extends to the potential jurisdiction of the appellate court where an appeal is not then pending but may be later perfected," and is "not confined to the issuance of writs in aid of a jurisdiction already acquired by appeal." *Federal Trade Comm'n v. Dean Foods Co.*, 384 U.S. 597, 603 (1966) (citations omitted); *Harris v. Nelson*, 394 U.S. 286, 299-300 (1969). In *Harris*, the Court held:

> the habeas corpus jurisdiction and the duty to exercise it being present, the courts may fashion appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage. Where their duties require it, this is the inescapable obligation of the courts. Their authority is expressly confirmed in the All Writs Act, 28 U.S.C. § 1651. This statute has served since its inclusion, in substance, in the

7

> original Judiciary Act as a "legislatively approved source of procedural instruments designed to achieve the rational ends of law." . . . It has been recognized that the courts may rely upon this statute in issuing orders appropriate to assist them in conducting factual inquiries . . . . In *Price v. Johnston*, *supra*, this Court held explicitly that the purpose and function of the All Writs Act [is] to supply the courts with the instruments needed to perform their duty, as prescribed by the Congress and the Constitution, provided only that such instruments are "agreeable" to the usages and principles of law, extend to habeas corpus proceedings.

*Id*. at 299-300 (internal citations omitted). The All Writs Act has been applied as an "instrument" in furtherance of the courts' judicial function.

Specifically, the Eleventh Circuit noted Section 1651 "authorizes the Court to issue a stay to preserve issues for judicial review." *Messer v. Kemp*, 831 F.2d 946, 957 (11th Cir. 1987). This is precisely the relief Mr. Hanson is requesting. It is axiomatic that this Court will irrevocably lose jurisdiction to consider the federal claims that entitle Mr. Hanson to relief if the State of Oklahoma is allowed to execute him before full federal review can occur.

Many courts, including the Supreme Court, have used the All Writs Act to grant stay relief. See *Lenhard v. Wolff*, 443 U.S. 1306 (1979); *Republican State Cent. Comm. v. Ripon Soc'y, Inc.*, 409 U.S. 1222 (1972). In *Lenhard*, then Associate Justice Rehnquist, acting on behalf of the whole Court, used the All Writs Act to continue a stay of execution, although he personally would have voted to deny the stay if sitting as a member of the full court. *Lenhard*, 443 U.S. at 1312. The result in

*Lenhard* is consistent with the Court's recognition of the purpose of the All Writs Act:

> Procedural instruments are means for achieving the rational ends of law. . . Unless appropriately confined by Congress, a federal court may avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it.

*Adams v. United States ex rel. McCann*, 317 U.S. 269, 273 (1942).

In *Federal Trade Commission v. Dean Foods Co.*, 384 U.S. 597 (1966), the Court made it clear that a federal court may use the All Writs Act to preserve its future federal jurisdiction over a matter committed to it by statute. The Seventh Circuit enjoined a company's merger and dissolution to preserve its future jurisdiction under the Administrative Procedure Act, which grants the Court of Appeals original jurisdiction to review final orders of federal administrative agencies. Although the regulatory matter of merger and dissolution was pending before an administrative agency and no federal court action formally had been initiated, the Seventh Circuit was empowered by the All Writs Act to stay the dissolution of the company pending invocation of its jurisdiction under the Administrative Procedure Act. *Dean Foods*, 384 U.S. at 603-605.

In *Application of President and Directors of Georgetown College*, 331 F.2d 1000 (D.C. Cir. 1964), Judge Wright issued an order under the All Writs Act permitting nonconsensual blood transfusions. Recognizing that federal jurisdiction

does not depend on a comprehensive initial pleading, the Court explicitly noted and excused defects in the form of the papers filed:

> Though the papers may be irregular in form [counsel had appeared in chambers with a proposed order, and filed no other papers], in substance they perform the office of a complaint, indicating the nature of the matter in dispute, the grounds of jurisdiction, and the relief sought. Defects in the complaint are not fatal under the Rules, certainly where the deficiency is explained by lack of time or skill or the like. . . . Even "the lack of a complaint is not jurisdictional and *** when there has been no timely objection, a valid judgment may properly be entered in such an informal litigation.

*Id.* at 1001 n.2 (citations omitted).

Historically, the jurisdiction-preserving power of the All Writs Act has been used by the federal courts to stay the execution of death-row prisoners. *See, e.g.*, *Edwards v. New York*, 76 S. Ct. 538 (March 30, 1956) (Harlan, J. in chambers) (despite "grave doubt, to say the least" as to the presence of a substantial federal question, "this being a capital case, I am constrained to give petitioner a reasonable opportunity to petition for a writ of certiorari"); *United States v. Shipp*, 203 U.S. 563, 573 (1906) (Holmes, J.) (even if federal habeas jurisdiction had been absent, the stay of execution as proper, as was contempt prosecution arising from lynching the habeas petitioner during stay; stay was necessary for federal court to determine its own jurisdiction over action).

## CONCLUSION

Mr. Hanson presents serious issues, and there is a likelihood he will succeed on the merits. Moreover, an execution is obviously irreparable. A stay would only continue the status quo. The public interest is in close examination of the instant matter. All things considered, there is strong support for a stay.

Wherefore, Mr. Hanson, by and through his counsel, prays the Court grant a stay of execution to allow this case to proceed in an orderly fashion.

Respectfully submitted,

*s/ Hunter Labovitz*
HUNTER LABOVITZ, NJ Bar # 010942006
Assistant Federal Public Defender
THOMAS D. HIRD, OBA #13580
Research and Writing Specialist
Office of the Federal Public Defender
Western District of Oklahoma
Capital Habeas Unit
Old Post Office Building
215 Dean A. McGee Ave., Suite 707
Oklahoma City, Oklahoma 73102
(405) 609-5975 telephone
(405) 609-5976 facsimile
Tom_Hird@fd.org
Hunter_Labovitz@fd.org

COUNSEL FOR APPELLANT,
JOHN FITZGERALD HANSON

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of June 2025, I electronically transmitted the attached document using Court's ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing, which effects service upon all counsel of record.

*s/ Hunter Labovitz*
HUNTER LABOVITZ

## **CERTIFICATE OF DIGITAL SUBMISSION**

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made pursuant 10th Cir. R. 25.5; (2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents; and (3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Symantec Antivirus, Full Version 12.1.1000.157.105, and according to the program is free of viruses.

Dated this 2nd day of June 2025.

                                                                 *s/ Hunter Labovitz*
                                                                 HUNTER LABOVITZ