**[ORAL ARGUMENT NOT REQUESTED]**

No. 25-7044

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

————————————

JOHN FITZGERALD HANSON,

Petitioner-Appellant,

v.

CHRISTE QUICK, Warden; STEVEN HARPE, Director of the Oklahoma Department of
Corrections; DANON COLBERT, Acting Regional Director, U.S. Department of Justice,
Federal Bureau of Prisons; WILLIAM K. MARSHAL III, Director,* U.S. Department of
Justice, Federal Bureau of Prisons,

Respondents-Appellees.

————————————

On Appeal from the United States District Court
for the Eastern District of Oklahoma
District Court Case No. 6:25-cv-00081 (Judge Ronald A. White)

————————————

BRIEF FOR FEDERAL APPELLEES

————————————

*Of Counsel:*

ELISA MASON
  *Acting Assistant Director/General Counsel*

RENEE B. FORNSHILL
  *Associate General Counsel*

ANDREW HAMILTON SMITH
  *Assistant General Counsel*
  *Federal Bureau of Prisons*
  *U.S. Department of Justice*
  *320 First Street, NW Suite 977*
  *Washington, DC 20534*
  *(202) 353-8165*

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

CHRISTOPHER J. WILSON
  *United States Attorney*

MELISSA N. PATTERSON
AMANDA L. MUNDELL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7252*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3469*

————————————

* Pursuant to Fed. R. App. P. 43(c)(2), William K. Marshall III is automatically substituted for William W. Lothrop, who previously served as Acting Director.

# TABLE OF CONTENTS

Page

STATEMENT OF RELATED APPEALS

GLOSSARY

TABLE OF AUTHORITIES .................................................................................... iii

INTRODUCTION ..................................................................................................... 1

STATEMENT OF JURISDICTION ......................................................................... 2

STATEMENT OF THE ISSUES .............................................................................. 2

PERTINENT STATUTES ........................................................................................ 3

STATEMENT OF THE CASE ................................................................................. 3

      A.     Statutory Background ............................................................... 3

      B.     Factual Background .................................................................. 4

      C.     Prior Proceedings ..................................................................... 8

SUMMARY OF ARGUMENT ............................................................................... 10

STANDARD OF REVIEW ..................................................................................... 13

ARGUMENT .......................................................................................................... 13

I.      Federal Appellees Do Not Have Custody Of Hanson And Are Not Proper Habeas Respondents. ................................................... 13

II.     Hanson Cannot Succeed On His *Ultra Vires* Claim For Injunctive Relief. ....... 14

      A.     Hanson's Allegation Of Error In BOP's Exercise Of Its Undoubted Statutory Authority To Transfer Inmates To State Custody Is Not Judicially Reviewable. ...................................... 15

      B.     BOP Complied With The Transfer Requirements In 18 U.S.C. § 3623. ...................................................... 20

C.      Hanson Fundamentally Misreads The Relevant Statutes Governing
         Prisoner Transfer And Release. ................................................................ 21

CONCLUSION ............................................................................................................ 30

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Atkinson v. Hanberry,*
589 F.2d 917 (5th Cir. 1979) ................................................................. 16

*CSG Workforce Partners, LLC v. Watson,*
512 F. App'x 830 (10th Cir. 2013) ................................................ 19

*Danos v. Jones,*
652 F.3d 577 (5th Cir. 2011) ................................................... 18, 19

*Federal Express Corp. v. Dep't of Commerce,*
39 F.4th 756 (D.C. Cir. 2022) ...................................... 6, 14, 18, 20

*Hall v. Looney,*
256 F.2d 59 (10th Cir. 1958) ......................................................... 26

*Hanson v. Sherrod,*
797 F.3d 810 (10th Cir. 2015) ......................................................... 5

*Hayward v. Looney,*
246 F.2d 56 (10th Cir. 1957) ......................................................... 26

*Hernandez v. U.S. Attorney Gen.,*
689 F.2d 915 (10th Cir. 1982) ..................................................... 26

*Kelley v. Oregon,*
273 U.S. 589 (1927) ......................................................................... 26

*Kholyavskiy v. Achim,*
443 F.3d 946 (7th Cir. 2006) ......................................................... 13

*Konigsberg v. Ciccone,*
417 F.2d 161 (8th Cir. 1969) ......................................................... 16

*Larson v. Domestic & Foreign Commerce Corp.,*
337 U.S. 682 (1949) ......................................................................... 18

*Latu v. Ashcroft,*
375 F.3d 1012 (10th Cir. 2004) ................................................... 19

*Loper Bright Enters. v. Raimondo,*
603 U.S. 369 (2024) ......................................................................... 27

*Miller-El v. Cockrell*,
    537 U.S. 322 (2003) ................................................................ 2

*Moody v. Holman*,
    887 F.3d 1281 (11th Cir. 2018) ............................................ 17, 25

*Oestereich v. Selective Serv. Sys. Local Board No. 11*,
    393 U.S. 233 (1968) ................................................................ 14

*Oklahoma v. Tellez*, No. 7:22-cv-00108-O,
    2022 WL 17686579 (N.D. Tex. Dec. 13, 2022) ............................ 6, 27, 28

*Palma-Salazar v. Davis*,
    677 F.3d 1031 (10th Cir. 2012) ............................................ 13

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984) ................................................................ 19

*Poland v. Stewart*,
    117 F.3d 1094 (9th Cir. 1997) ............................................ 25, 28

*Ponzi v. Fessenden*,
    258 U.S. 254 (1922) ................................................................ 15, 28

*Rumsfeld v. Padilla*,
    542 U.S. 426 (2004) ................................................................ 2, 13

*State v. Heisler*,
    390 P.2d 846 (Ariz. 1964) ...................................................... 16

*Strand v. Schmittroth*,
    251 F.2d 590 (9th Cir. 1957) ............................................ 16-17, 20

*Trigg v. Moseley*,
    433 F.2d 364 (10th Cir. 1970) ............................................ 16, 26

*United States v. Hooker*,
    607 F.2d 286 (9th Cir. 1979) ............................................ 16

*United States v. Warren*,
    610 F.2d 680 (9th Cir. 1980) ............................................ 16

*United States ex rel. Buchalter v. Warden of Sing Sing Prison*,
    141 F.2d 259 (2d Cir. 1944) ............................................ 25

*United Tribe of Shawnee Indians v. United States*,
   253 F.3d 543 (10th Cir. 2001) ........................................................ 19

*Vanover v. Cox*,
   136 F.2d 442 (8th Cir. 1943) ........................................................ 17

*Weekes v. Fleming*,
   301 F.3d 1175 (10th Cir. 2002) ................................................. 15, 23

*Wyoming v. United States*,
   279 F.3d 1214 (10th Cir. 2002) ........................................... 13, 18, 19

**Statutes:**

Act of Apr. 30, 1940,
   Pub. L. No. 76-503, 54 Stat. 175
   (originally codified at 18 U.S.C. §§ 733, 733a, 733b (1940)) .................................15-16

Act of June 25, 1948,
   Pub. L. No. 80-772, 62 Stat. 683 ................................................. 16

Act of Oct. 12, 1984,
   Pub. L. No. 98-473, 98 Stat. 1837 ............................................... 16

18 U.S.C. §§ 3581-3586 ...................................................................... 3

18 U.S.C. §§ 3621-3626 ...................................................................... 4

18 U.S.C. § 3621(a) ...................................................................... 3, 23

18 U.S.C. § 3621(b) ...................................................................... 3, 24

18 U.S.C. § 3623 ...................... 1, 2, 4, 7, 8, 10, 11, 14, 16, 17, 19, 20, 21, 22, 24, 27, 28

18 U.S.C. § 3624(a) ...................................................................... 23

18 U.S.C. § 3624(c) ...................................................................... 24

18 U.S.C. § 3625 ...................................................................... 4, 17

18 U.S.C. § 4085 ...................................................................... 16

28 U.S.C. § 509 ...................................................................... 27

28 U.S.C. §§ 509-510 ........................................................................................ 7

28 U.S.C. § 510 ................................................................................................ 27

28 U.S.C. § 1291 ................................................................................................ 2

28 U.S.C. § 1331 ................................................................................................ 2

28 U.S.C. § 2241 ................................................................................................ 2

28 U.S.C. § 2253(c)(1) ....................................................................................... 2

**Regulatory Material:**

Exec. Order No. 14164, *Restoring the Death Penalty and Protecting Public Safety*,
    90 Fed. Reg. 8463 (Jan. 30, 2025) .................................................................. 7

**Other Authority:**

Amended Judgment, *United States v. Hanson*, No. 4:99-cr-00125-GKF
    (N.D. Okla. July 17, 2000), ECF No. 86 .......................................................... 5

## STATEMENT OF RELATED APPEALS
## PURSUANT TO CIRCUIT RULE 28.2(C)(3)

The government has identified the following prior or related appeals:

*Hanson v. Sherrod*, 797 F.3d 810 (10th Cir. 2015)

*United States v. Miller*, 15 F. App'x 713 (10th Cir. 2001)

## GLOSSARY

| APA | Administrative Procedure Act |
|-----|------------------------------|
| BOP | Federal Bureau of Prisons |

## INTRODUCTION

On February 28, 2025, the Acting Director of the Federal Bureau of Prisons (BOP) determined pursuant to 18 U.S.C. § 3623 that it was in the public interest to transfer petitioner John Hanson—who was then in federal custody serving a life sentence—to the custody of the State of Oklahoma, which had imposed on Hanson a sentence of death for the violent murder of a 77-year-old woman. On March 1, 2025, BOP transferred Hanson to state custody, and he is currently incarcerated at the Oklahoma State Penitentiary; Oklahoma has scheduled the execution to carry out his state sentence for June 12, 2025.

In this appeal, Hanson disclaims any challenge to the BOP Director's determination under 18 U.S.C. § 3623 that it was in the public interest to transfer him to Oklahoma's custody in order to allow the state to effectuate its lawful capital sentence. Instead, he insists that in § 3623, Congress forbade such transfers, eliminating federal officials' discretion to transfer federal inmates to state custody before the end of their federal sentences. Hanson's arguments are flatly at odds with the statute's text, its underlying history, and common sense; they cannot establish a basis for relief under any standard, let alone meet the demanding standards attending nonstatutory, *ultra vires* judicial review. To the extent that Hanson's claims turn on his untenable reading of § 3623, this Court should deny relief.

## STATEMENT OF JURISDICTION

Hanson invoked the district court's jurisdiction under, *inter alia*, 28 U.S.C. §§ 1331 and 2241. ROA 11.[1] The district court entered a final judgment on May 27, 2025, and Hanson filed a timely notice of appeal on May 28, 2025. ROA 646-47. This Court has jurisdiction over Hanson's appeal from the dismissal of his complaint for injunctive relief under 28 U.S.C. § 1291. This Court "lacks jurisdiction to rule on the merits of appeals from habeas petitioners" until it issues a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also* 28 U.S.C. § 2253(c)(1) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals … ."). The government takes no position on the propriety of issuing a certificate of appealability with respect to claims regarding Oklahoma officials. However, this Court should dismiss federal appellees as named respondents to Hanson's habeas petition for lack of statutory jurisdiction: Federal appellees do not have custody of Hanson and are thus not proper habeas respondents. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434 & n.7 (2004).

## STATEMENT OF THE ISSUES

In 18 U.S.C. § 3623, Congress authorized BOP to transfer a federal prisoner who has been convicted of a state felony to a state detention facility "prior to his release

---

[1] Citations to the record on appeal are formatted as "ROA [page number]."

from a Federal prison facility." Pursuant to that provision, BOP transferred Hanson to Oklahoma state custody. The issues are:

1. Whether the district court correctly disposed of Hanson's habeas petition as to federal appellees who lack custody of Hanson. *See* ROA 529-30, 591, 644.

2. Whether BOP acted *ultra vires* in transferring Hanson to state custody before the expiration of his federal life sentence. ROA 19-23, 591-600, 644.

## PERTINENT STATUTES

Pertinent statutory provisions are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    Statutory Background

Federal law requires that "[a] person who has been sentenced to a term of imprisonment pursuant to [18 U.S.C. §§ 3581-3586] shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed." 18 U.S.C. § 3621(a). BOP "shall designate the place of the prisoner's imprisonment." *Id.* § 3621(b). Congress specified that BOP may choose to designate a state-run facility, as well as a federal facility. *See id.* ("The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, *whether maintained by the Federal Government or otherwise* … that the Bureau determines to be appropriate and suitable … ." (emphasis added)). And Congress provided that "[t]he Bureau may at any time … direct the transfer of a prisoner from

3

one penal or correctional facility to another" after considering a list of statutory factors. *Id.*

Federal law also permits BOP to transfer a prisoner to a state detention facility if he has been charged with or convicted of a state felony. *See* 18 U.S.C. § 3623. In that case, the Director of BOP "shall order" the prisoner "transferred to an official [state] detention facility" "prior to his release from a Federal prison facility" if: (1) "the transfer has been requested by the Governor or other executive authority of the State"; (2) "the State has presented to the Director a certified copy of the …. judgment of conviction"; and (3) "the Director finds that the transfer would be in the public interest." *Id.*

Congress specifically exempted "any determination, decision, or order" BOP makes regarding inmate placement and transfer under 18 U.S.C. §§ 3621-3626 from the provisions of the Administrative Procedure Act (APA). 18 U.S.C. § 3625 (stating that "[t]he provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter."). Thus, the APA's waiver of sovereign immunity, default cause of action, and standards of review are inapplicable to BOP's decision to transfer a federal inmate to state custody. *Id.*

### B.    Factual Background

**1.** On August 31, 1999, Hanson and an accomplice abducted 77-year-old Mary Bowles from a mall in Tulsa and drove her to an isolated dirt pit. ROA 582 (findings

and recommendations of magistrate judge); ROA 644 (adopting and affirming the magistrate judge's findings and recommendations).   Hanson murdered Mary by shooting her between four and six times and then left her body to decompose.  *See Hanson v. Sherrod*, 797 F.3d 810, 820 (10th Cir. 2015).  His accomplice executed another victim who had potentially witnessed Mary's abduction.  *Id.* at 819.  Over the next days, the duo robbed a video store and a bank at gunpoint.  *Id.* at 820.  "Finally," on September 9, 1999, "law enforcement put an end to Hanson and [his accomplice's] armed-felony binge."  Hanson, who had "barricaded himself" in a motel where police found them, surrendered only after police deployed tear gas.  *Id.* at 821.

In 2000, a federal jury in the Northern District of Oklahoma convicted Hanson of various offenses stemming from his violent, armed crime spree.  ROA 583 n.2.  He was sentenced to life in prison, *see* Amended Judgment, *United States v. Hanson*, No. 4:99-cr-00125-GKF (N.D. Okla. July 17, 2000), ECF No. 86, and placed in BOP custody at Federal Correctional Complex Pollock, a facility in the Western District of Louisiana.  Hanson was later charged by the State of Oklahoma with first degree murder, convicted by a jury, and sentenced to death.  ROA 583-84.  His execution date was postponed while Hanson exhausted his direct appeals, pursued post-conviction relief in federal

court, and challenged Oklahoma's execution protocol and method of execution.  ROA
583-85.  Courts rejected nearly all of his challenges.[2]

**2.**  After "it appeared there were no remaining legal barriers" to implementation
of Hanson's state capital sentence in October 2022, Oklahoma scheduled his execution
for December 2022 and requested that BOP transfer Hanson to state custody.  ROA
585-86.  BOP's Regional Director for the South Central Region denied that request.
Oklahoma sued BOP to compel Hanson's transfer, but a district court in the Northern
District of Texas dismissed the suit for lack of jurisdiction.  *See Oklahoma v. Tellez*, No.
7:22-cv-00108-O, 2022 WL 17686579, at *3 (N.D. Tex. Dec. 13, 2022).  The court
noted that in seeking to label BOP's determination under § 3623 *ultra vires*, the state
plaintiffs "invite[d] th[e] Court to engage in a debate about the public interest when
Congress has clearly limited such review"—an invitation the court "decline[d],"
concluding that because plaintiffs could not show that "in refusing the State's request
for a transfer, the BOP Director 'plainly act[ed] in excess of [his] delegated powers and
contrary to a specific prohibition in the statute that is clear and mandatory,'" they could
not establish the court's "jurisdiction to review their *ultra vires* claim."  *Id.* (last two
alterations in original) (quoting *Federal Express Corp. v. Dep't of Commerce*, 39 F.4th 756,
763 (D.C. Cir. 2022)).

---

[2] In 2003, the Oklahoma Court of Criminal Appeals concluded that errors had
occurred at his state trial and remanded the case for resentencing, but a jury once again
imposed the death penalty.  *See* ROA 583-84.

6

**3.**  On January 20, 2025, President Trump issued an Executive Order stating that "[i]t is the policy of the United States to ensure that the laws that authorize capital punishment are respected and faithfully implemented."  Exec. Order No. 14164, *Restoring the Death Penalty and Protecting Public Safety*, 90 Fed. Reg. 8463, 8463 (Jan. 30, 2025).  United States Attorney General Pam Bondi subsequently issued a memorandum titled "Reviving the Federal Death Penalty and Lifting the Moratorium on Federal Executions."  ROA 548.  In order to "[a]ssist[] with the Implementation of State and Local Death Sentences," Attorney General Bondi directed BOP to "work with each state that allows capital punishment to ensure the states have sufficient supplies and resources to impose the death penalty," including by "transferring federal inmates with state or local death sentences to the appropriate authorities to carry out those sentences."  ROA 551.

On January 23, 2025, Oklahoma renewed its transfer request so that it could carry out Hanson's execution, currently set for June 12, 2025.  ROA 586, 643.  On February 11, 2025, Attorney General Bondi concluded that the requirements of 18 U.S.C. § 3623 were satisfied and directed BOP to transfer Hanson to state custody.  ROA 45-46 (invoking her authority under 28 U.S.C. §§ 509-510 to "direct[] the Acting Director of the Federal Bureau of Prisons" to make the transfer).

Meanwhile, Hanson sought to enjoin his transfer in a suit filed on January 29, 2025, against Oklahoma officials and BOP in the Western District of Louisiana.  *See Hanson v. Drummond*, No. 1:25-cv-00102 (W.D. La.).  The district court ultimately

dismissed the suit as "not ripe and, therefore, not justiciable" because the Director of BOP had yet to respond to Oklahoma's transfer request.  Judgment at 4, Hanson, No. 1:25-cv-00102 (Feb. 27, 2025), ECF No. 20.  The court reasoned that, notwithstanding directives from both the President and Attorney General Bondi, "18 U.S.C. § 3623 clearly places the discretion as to whether a prisoner should be transferred to a state with the BOP Director."  *Id.*  Thus, although the court noted that it was "doubtful that the court would grant the requested relief" in light of the "discretion" 18 U.S.C. § 3623 affords the BOP Director, it dismissed the complaint without prejudice because of the absence in the record of a determination by the BOP Director.  *Id.* at 5.

The then-Acting Director of BOP determined that Hanson's transfer is in the public interest and approved Oklahoma's transfer request on February 28, 2025.  ROA 47.  BOP transferred Hanson to Oklahoma State Penitentiary on March 1, 2025.  ROA 587.  The lawsuit giving rise to this appeal followed.

## C.    Prior Proceedings

Hanson filed a combined petition for a writ of habeas corpus and a complaint for declaratory and injunctive relief in the Easten District of Oklahoma on March 14, 2025.  ROA 6-27.  The petition-complaint alleged, *inter alia*, that because Hanson was serving a federal life sentence and thus there was "no prospect" he would be released from federal custody, "there could be no lawful transfer" to state custody under 18 U.S.C. § 3623, which Hanson interpreted to require an imminent release from federal custody.  ROA 19-20.  Hanson sought an injunction requiring "Warden Quick to

arrange to return physical custody of Mr. Hanson to federal custody" and the BOP Director "to secure physical custody of Mr. Hanson." ROA 25. In April, Hanson also filed a motion for a stay of execution. *See* ROA 567-78.

A magistrate judge issued findings and recommendations on May 8, 2025. ROA 579-610. After concluding that federal respondents were not proper parties to the habeas petition, the magistrate judge concluded that Hanson's "challenge collapses on statutory ground," because "[a]ll three" of § 3623's conditions "were satisfied here." ROA 591; *see also* ROA 598. The magistrate judge explained that "[f]ederal courts have no business second-guessing" the Executive Branch's determinations regarding the public interest under § 3623, a matter that Congress has "delegat[ed] … to the Executive" with "no limiting criteria, no checklists, no balancing tests." ROA 593; *see also* ROA 598. And with respect to Hanson's proposal to cabin the transfer authority by virtue of § 3623's requirement that BOP effectuate a transfer "prior to his release from a Federal prison facility," the magistrate judge explained that this language "plainly ensures that transfers under § 3623 occur before a prisoner exits federal custody," not that BOP must "wait until the last days or weeks of a [federal] sentence" to transfer. ROA 597; *see also* ROA 601 (explaining that "[t]he 'prior to release' clause is a condition permitting transfer, not a prohibition against earlier action").

The district court "adopted and affirmed" the magistrate judge's findings and recommendations, "as supplemented by" the district court's own order. ROA 644; *see* ROA 637-45. The court further examined Hanson's argument regarding the meaning

9

of the phrase "prior to his release" in § 3623. ROA 639-40. The court explained that § 3623 "is a codification" of the longstanding precedent that one sovereign's "discretion to relinquish … primary custody to another sovereign" is "a matter of comity to be resolved by the executive branches of each sovereign." ROA 640. And the court rejected the view that BOP lacked discretion to transfer Hanson until "'the last 90 days'" of his sentence in line with a BOP program statement where Hanson was serving a "*life* sentence in the federal facility" and "[t]here was no 'last 90 days' to be measured." ROA 641 (also noting BOP's discretion regarding the "'ordinar[y]'" practice in its own guidance).

The district court further rejected Hanson's argument that he was entitled to additional notice before being transferred to Oklahoma's custody. ROA 642. The court noted that § 3623 "makes no mention of court involvement" and that "[i]n any event, there is no liberty interest in the situs of confinement." ROA 642-43.

Finally, the court denied Hanson a certificate of appealability with respect to his habeas claim. ROA 644.

## SUMMARY OF ARGUMENT

Hanson attempts to thwart Oklahoma from carrying out his capital sentence by insisting that Congress prohibited federal officials from transferring him to state custody before he has served out his federal life sentence. That startling proposition turns on Hanson's atextual and ahistorical reading of 18 U.S.C. § 3623, the statute codifying the Executive Branch's discretion to transfer federal prisoners to state custody

to stand trial or serve sentences for state crimes.  This Court should deny any relief based on Hanson's untenable interpretation of § 3623.

**I.**  The district court correctly disposed of Hanson's habeas petition with respect to the federal appellees, who do not have custody of Hanson and are therefore not proper habeas respondents.

**II.**  Hanson cannot succeed on his complaint seeking injunctive relief;  his contention that BOP violated 18 U.S.C. § 3623's "temporal requirement" turns on a plainly incorrect interpretation of the statute.

**A.**  Because Congress has exempted BOP's decision to transfer an inmate under § 3623 from the APA's judicial-review provisions, Hanson resorts to a nonstatutory, *ultra vires* claim for which relief is available only if Hanson can show that BOP acted without any authority whatsoever.  Hanson cannot meet this exacting standard; § 3623 specifically authorizes BOP to transfer an inmate from federal to state custody, and Hanson's contention that BOP erred in applying that authority to him does not trigger the narrow *ultra vires* doctrine permitting courts to review patently lawless agency action even absent a statutory cause of action or waiver of sovereign immunity.

**B.**  Even if *ultra vires* review permitted this Court to scrutinize BOP's compliance with § 3623, Hanson could still not establish any basis for injunctive relief.  The statute enumerates three requirements:  (1) a state request; (2) the presentation of a certified copy of a judgment of conviction; and (3) the BOP Director's determination that transfer would be in the public interest.  It is uncontested that these three requirements

were satisfied here.  Section 3623 also directs that a transfer to a state facility occur "prior to [an inmate's] release from a Federal prison facility," a condition with which BOP complied by transferring Hanson from Federal Correctional Complex Pollock.

**C.**  Hanson's contention that § 3623 does not authorize an inmate's transfer until after he has fulfilled his federal sentence is flatly at odds with the statute's text, which includes no such limitation.  As the district court explained, the phrase "prior to … release from a Federal prison facility" ensures that § 3623 transfers occur before BOP permits an inmate to leave federal prison; it does not prohibit federal officials from transferring until the final days of a federal sentence.  Hanson's insistence to the contrary is no more compatible with the history underlying or BOP's implementation of § 3623 than it is with the statutory text.  For over a century, courts have recognized the Executive's discretion to yield primary jurisdiction over an inmate to a state wishing to convict or impose their own sentence on a federal prisoner who has violated state as well as federal law.  That longstanding discretion, codified in § 3623, has never been constrained by the amount of time an inmate has left to serve on a federal sentence; on the contrary, courts have made clear that the Executive is free to allow a state to carry out a death sentence against an inmate with a prior federal life sentence.  And Hanson's reading would create anomalous results, permitting BOP to transfer inmates serving shorter federal sentences to states for execution, while immunizing only those who committed federal crimes terrible enough to warrant some of the most serious federal sentences from the imposition of state capital punishment.

## STANDARD OF REVIEW

This Court reviews both the dismissal of a complaint and the disposition of a habeas petition de novo.  *See, e.g.*, *Wyoming v. United States*, 279 F.3d 1214, 1222 (10th Cir. 2002) (complaint); *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012) (habeas petition).

## ARGUMENT

### I.   Federal Appellees Do Not Have Custody Of Hanson And Are Not Proper Habeas Respondents.

Hanson's combined habeas petition and complaint name both federal officials and Oklahoma officials as respondents.  Under the immediate custodian rule, however, "the proper respondent [to a habeas petition] is the warden of the facility where the prisoner is being held."  *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).  Because Hanson is currently in state custody at the Oklahoma State Penitentiary, no BOP or other federal official can be a proper respondent to his habeas petition.  *See, e.g.*, *Kholyavskiy v. Achim*, 443 F.3d 946, 949 (7th Cir. 2006) ("A century-old line of Supreme Court precedent has defined a habeas petitioner's custodian as the person who has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge.") (internal quotations omitted).  Indeed, because federal officials no longer have custody over petitioner, it is unclear what habeas relief Hanson is seeking or could obtain from federal officials.

13

The Court should therefore dismiss federal appellees as named respondents to Hanson's habeas petition.

## II.    Hanson Cannot Succeed On His *Ultra Vires* Claim For Injunctive Relief.

Hanson claims that BOP's decision to transfer him to Oklahoma custody given his Oklahoma conviction and sentence violated 18 U.S.C. § 3623, a statute that expressly authorizes BOP to transfer federal inmates to state custody if they have been convicted of state crimes.  Apparently recognizing that Congress specifically exempted BOP's decisions under § 3623 from the APA's judicial-review provisions, Hanson resorts to a nonstatutory, *ultra vires* claim, subject to a "demanding standard" under which judicial relief is available only for the "narrow purpose" of correcting agency action that "go[es] beyond mere legal or factual error and amount[s] to a 'clear departure by the [agency] from its statutory mandate' or [is] 'blatantly lawless.'"  *Federal Express Corp. v. Dep't of Commerce*, 39 F.4th 756, 763-65 (D.C. Cir. 2022) (third alteration in original) (quoting *Oestereich v. Selective Serv. Sys. Local Board No. 11*, 393 U.S. 233, 238 (1968)).  Hanson's claim that BOP applied § 3623 incorrectly does not allege the type of error falling within this narrow doctrine and is thus not judicially reviewable.  And in any event, even if judicial review were available—and under any standard—Hanson's claim is simply meritless.  BOP complied with § 3623, and Hanson's argument to the contrary turns on a reading that defies the statute's text and history, creating an anomaly that would insulate the nation's worst offenders from the imposition of lawful state

capital sentences so long as they had also committed federal crimes terrible enough to warrant a federal life sentence.

### A. Hanson's Allegation Of Error In BOP's Exercise Of Its Undoubted Statutory Authority To Transfer Inmates To State Custody Is Not Judicially Reviewable.

**1.** Building on a long history of Executive Branch discretion over decisions about where to hold prisoners and when to yield custody to another sovereign, Congress has entrusted BOP to make decisions about when to transfer a federal inmate convicted of a state crime to a state facility. For over a century, even before Congress acted, federal courts have recognized that the federal government may waive its right to exclusive custody over a federal prisoner and transfer the prisoner to a state as a matter of "comity" between the two sovereigns. *E.g.*, *Ponzi v. Fessenden*, 258 U.S. 254, 261-62 (1922); *Weekes v. Fleming*, 301 F.3d 1175, 1180-81 (10th Cir. 2002) (discussing the "rule of comity" between two sovereigns with jurisdiction over a "convicted prisoner" (quotations omitted)). In 1940, Congress codified that authority in a provision expressly permitting such transfers—the predecessor statute to § 3623. The statute provided that the Attorney General "shall" cause a federal prisoner to be transferred to a state prison "prior to his release" (1) "upon the request of the Governor or the executive authority of such State"; (2) "upon the presentation of a certified copy of [an] indictment or judgment of conviction" for a state-law felony; (3) "if [the Attorney General] finds it in the public interest to do so." Act of Apr. 30, 1940, Pub. L. No. 76-503, 54 Stat. 175, 175 (originally codified at 18 U.S.C. §§ 733, 733a, 733b

(1940)).  In 1948, the statute was transferred to 18 U.S.C. § 4085, *see* Act of June 25, 1948, Pub. L. No. 80-772, 62 Stat. 683, 850, and in 1984 it was transferred (with minor stylistic changes) to § 3623.  *See* Act of Oct. 12, 1984, Pub. L. No. 98-473, 98 Stat. 1837, 2008.

This Court, along with numerous others, have interpreted § 3623's predecessor statute as codifying the power recognized in *Ponzi*—that is, as congressional affirmation of the common-law doctrine that the Attorney General may in her sole discretion waive, in whole or in part, the federal government's exclusive, primary jurisdiction over a prisoner wanted by a state.  *Trigg v. Moseley*, 433 F.2d 364, 367 (10th Cir. 1970); *see, e.g.*, *Atkinson v. Hanberry*, 589 F.2d 917, 919 n.4 (5th Cir. 1979); *Konigsberg v. Ciccone*, 417 F.2d 161, 162 (8th Cir. 1969); *see also United States v. Hooker*, 607 F.2d 286, 289 (9th Cir. 1979); *State v. Heisler*, 390 P.2d 846, 848 (Ariz. 1964).  But the statutory codification "in no way lessened" the Executive Branch's "discretionary power" to grant or deny a state's transfer request.  *Heisler*, 390 P.2d at 848; *see also Ciccone*, 417 F.2d at 162.

Consistent with the Executive Branch discretion Congress preserved in 18 U.S.C. § 3623 and its predecessors, courts have routinely recognized the Executive Branch's discretion to transfer federal inmates under that statute without judicial interference.  *See United States v. Warren*, 610 F.2d 680, 685 (9th Cir. 1980) (explaining that as "the sovereign with priority of jurisdiction," the United States "may elect under the doctrine of comity to relinquish it to another sovereign" and that "[t]his discretionary election is an executive, and not a judicial, function"); *Strand v. Schmittroth*, 251 F.2d 590, 610-11

16

(9th Cir. 1957) (explaining that a prisoner "who has violated the criminal statutes of both the federal and a state government may not complain [to a court] of the order in which he is tried or punished for such offenses" and that "[t]he interested sovereigns may arrange the order of trial and punishment according to their convenience" (quoting *Vanover v. Cox*, 136 F.2d 442, 443-44 (8th Cir. 1943))).  And courts have declined to second guess the United States' (or any other sovereign's) discretion to yield its primary jurisdiction to another sovereign simply because the second sovereign wishes to carry out a capital sentence.  Indeed, as the Eleventh Circuit has explained, "[a] number of federal and state cases hold that" a prisoner "cannot delay his execution by the second sovereign until he finishes serving a non-capital sentence imposed by the first sovereign." *Moody v. Holman*, 887 F.3d 1281, 1290-91 (11th Cir. 2018) (collecting cases and rejecting habeas claimant's "substantive assertion that the Alabama execution cannot be carried out until the federal sentences of life imprisonment are completed").

Whether the capital context or not, there is no evidence that Congress sought to permit the federal judiciary a role in policing the Executive Branch's determinations under 18 U.S.C. § 3623.  On the contrary, Congress specifically shielded transfer decisions under § 3623 from APA review.  *See* 18 U.S.C. § 3625 (listing all APA provisions and providing they "do not apply to the making of any determination, decision, or order under this subchapter").  And where Congress has withdrawn the APA's default cause of action and waiver of sovereign immunity and declined to authorize any other form of judicial review, courts must guard against "dilut[ing]" any

17

residual authority courts have to order injunctive relief down "to the functional equivalent of the very APA action that Congress prohibited." *Federal Express Corp.*, 39 F.4th at 764.

**2.**  Because Congress specifically exempted BOP's decisions under § 3623 from the APA's waiver of sovereign immunity and judicial-review provisions, the only possible judicial review would be over a nonstatutory claim alleging *ultra vires* agency action.  Such review is not available to scrutinize "mere legal or factual error" but rather "only for the narrow purpose of obtaining injunctive relief" against "'extreme' agency error … that is 'patently a misconstruction of the Act,' that "'disregard[s] a specific and unambiguous statutory directive,' or that 'violate[s] some specific command of a statute.'"  *Federal Express Corp.*, 39 F.4th at 763-64 (last two alterations in original) (citations omitted).  As this Court has explained, "an official's erroneous exercise of delegated power is insufficient to invoke the exception," and "[o]fficial action is not ultra vires or invalid 'if based on an incorrect decision as to law or fact, if the officer making the decision was empowered to do so.'"  *Wyoming v. United States*, 279 F.3d 1214, 1229-30 (10th Cir. 2002) (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 695 (1949)).

Accordingly, *ultra vires* challenges face an exceedingly high bar.  Such a claim "is 'essentially a Hail Mary pass.'"  *Federal Express Corp.*, 39 F.4th at 765 (alteration omitted).  To prevail, a plaintiff "must 'do more than simply allege that the actions of the officer are illegal or unauthorized.'"  *Danos v. Jones*, 652 F.3d 577, 583 (5th Cir. 2011).  Instead,

18

a plaintiff must "establish that the officer was acting 'without any authority whatever,' or without any 'colorable basis for the exercise of authority.'" *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101 n.11 (1984)). "[T]he mere allegation that an officer acted wrongfully" does not trigger *ultra vires* review, since "the question of whether a government official acted ultra vires is quite different from the question of whether that same official acted erroneously or incorrectly as a matter of law." *Wyoming*, 279 F.3d at 1230.

**3.** Hanson cannot mount an *ultra vires* challenge here because BOP officials are unquestionably "statutorily empowered" to effectuate transfers of federal inmates to state custody under 18 U.S.C. § 3623. *Latu v. Ashcroft*, 375 F.3d 1012, 1020 (10th Cir. 2004). Hanson claims that BOP officials "acted erroneously" in exercising their statutory powers, *id.*, but it is conceded that BOP "has been delegated the authority to determine" when to make such transfers, meaning such determinations are "within [BOP's] delegated authority, and therefore not ultra vires," *United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 549 (10th Cir. 2001). At bottom, Hanson's complaint targets the BOP Director's decision, not his authority, to grant Oklahoma's request. *Danos*, 652 F.3d at 583. That does not state an *ultra vires* claim that could trigger this Court's ability to judicially review agency action where Congress has withheld APA review. *See, e.g., CSG Workforce Partners, LLC v. Watson*, 512 F. App'x 830, 834 (10th Cir. 2013) (explaining that "the ultra vires exception" is "not satisf[ied]" where an agency

"was empowered by statute to issue the subpoena" and the plaintiff argued only that it was "not subject to the" statute in question).

Indeed, the incompatibility of the *ultra vires* exception Hanson invokes with the highly discretionary context of inter-sovereign prisoner transfers is apparent from the nature of the injunction he seeks:  an order requiring the BOP Director "to secure physical custody of Mr. Hanson" from Oklahoma officials.  ROA 25.  Hanson identifies no court that has ever ordered such an intrusion into transfer and custody decisions contemplated by statute and long recognized to be a matter for "[t]he interested sovereigns [to] arrange … according to their convenience," without regard to a prisoner's attempt to secure judicial intervention into "the order in which he is … punished for" his federal and state offenses.  *Strand*, 251 F.2d at 610.

## B.    BOP Complied With The Transfer Requirements In 18 U.S.C. § 3623.

Even if *ultra vires* review were available here, any such claim would fail.  Far from constituting an "extreme" or "blatant[]" departure from its statutory authority, *Federal Express Corp.*, 39 F.4th at 764 (quotations omitted), BOP's transfer of Hanson to Oklahoma custody was entirely in accord with all relevant legal requirements.  Section 3623 provides that three enumerated conditions must be met before an inmate can be transferred:  (1) the transfer must be requested by a state executive authority; (2) the state must present BOP with a certified copy of the charging document or judgment of conviction; and (3) the BOP Director must find that the inmate's transfer is in the public

interest.  18 U.S.C. § 3623.  Section 3623 also requires that any transfer to state custody occur "prior to" an inmate's "release from a Federal prison facility."  *Id.*

As the record below demonstrates, each of these requirements was met.  The Oklahoma attorney general requested Hanson's transfer by letter to BOP and enclosed a certified copy of his judgment of conviction.  *See* ROA 28-35.  The then-Acting Director of BOP also determined that Hanson's transfer was in the public interest.  *See* ROA 47.  Finally, Hanson's transfer occurred while he was still incarcerated at Federal Correctional Complex Pollock, satisfying the statute's requirement that a transfer occur "prior to his release from a Federal prison facility."  18 U.S.C. § 3623.  Accordingly, BOP complied with 18 U.S.C. § 3623's requirements in transferring Hanson to allow Oklahoma to carry out its lawful sentence.[3]

### C.    Hanson Fundamentally Misreads The Relevant Statutes Governing Prisoner Transfer And Release.

Hanson resists BOP's straightforward application of 18 U.S.C. § 3623, contending that the statute's "prior to his release" phrase imposes a "temporal requirement" restricting transfers only to the period of time immediately before an

---

[3] Insofar as Hanson contends that he should have received notice in advance of his transfer, *see* Br. 10, the statute imposes no notice obligations on BOP, and Hanson's dissatisfaction on this score thus could not support an *ultra vires* claim here.  Moreover, Hanson identifies no way in which the transfer affected his ability to seek judicial review; there is no reason the Western District of Louisiana is any better positioned to review his claims than the district court below.

inmate is scheduled to be "release[d]" from federal custody.[4]  Br. 33, 35.  Moreover, Hanson argues, that "release" under § 3623 may occur only upon "expiration of a sentence."  Br. 18-19; *see also* Br. 30 (incorporating by reference arguments made in support of Hanson's request for a certificate of appealability on this issue).  On Hanson's proposed reading of the statute, he (and any inmate serving a federal life sentence) is categorically and forever ineligible for transfer to state custody because he "had not reached—nor will he ever reach—the expiration of his federal sentence."  Br. 27.  Thus, he argues, BOP acted *ultra vires* in transferring him so Oklahoma can carry out its lawful capital sentence.  *Id.*  Hanson's interpretation defies the statute's language, the longstanding history and implementation of § 3623, and common sense—not only does it fail to establish the type of violation of a clear statutory mandate that might qualify for *ultra vires* relief, it is simply wrong.

**1.**  To begin, 18 U.S.C. § 3623 does not contain a "temporal requirement that a federal prisoner have complete[d] his federal sentence prior to being eligible for transfer to a state facility."  Br. 33.  That alleged mandate finds no home in the statutory text, which requires only that BOP effectuate any transfer to state custody that the Director decides to make "prior to [an inmate's] release from a Federal prison facility."  18 U.S.C. § 3623.  The plain language of the statute permits BOP to make such a transfer at any

---

[4] In district court, Hanson also challenged BOP's determination that his transfer was in the public interest.  *See* ROA 19-20, 23, 564.  On appeal, Hanson has dropped—and expressly disclaimed—any such challenge.  Br. 34-35, 40 (stating that "Mr. Hanson is not challenging the BOP Director's determination of 'the public interest'").

point "prior" to releasing a prisoner from a federal prison, imposing no additional limitations about how far "prior" such transfer may occur. As the district court concluded, § 3623's "prior to his release" phrase "plainly ensures" that transfers happen before the federal government loses control of the inmate, rather than imposing some limitation that BOP must "wait until the last days or weeks of a [federal] sentence." ROA 597 (rejecting Hanson's reading as "creating an artificial restriction untethered from the statutory text or purpose").

This clear-cut reading of § 3623 hardly renders §§ 3621 and 3624 "nullities." Br. 16. Section 3621 provides that federal prisoners "shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed, or until earlier released for satisfactory behavior pursuant to the provisions of section 3624." 18 U.S.C. § 3621(a). Section 3624, in turn, states that a "prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment less any time credit toward the service of the prisoner's sentence." *Id.* § 3624(a). Hanson contends that, under these provisions, Congress permitted only one exception to § 3621's requirement that a federal prisoner serve his full sentence in BOP custody: early release based on good time credits, pursuant to § 3624. *See* Br. 15-18. But as the district court explained, transfers under § 3623 "do not constitute 'release' under § 3624." ROA 596. A federal prisoner who has been transferred to a state facility has not been released from his federal sentence, which may keep running while he is in a state facility. *See Weekes*, 301 F.3d at 1179-82 (concluding that an inmate should be

23

"given federal credit for time served" in an Idaho facility after his federal sentence had commenced in a federal facility). Rather, transfers under § 3623 reflect the "routine administrative management of physical custody" of inmates "long vested in BOP's discretion" by Congress, ROA 596, whose judgment that federal sentences may be served in state facilities is evident elsewhere in the statute. *See* 18 U.S.C. § 3621(b) (permitting BOP to designate as a place of imprisonment of federal inmates a state facility that satisfies "minimum standards of health and habitability established by the Bureau").

Nor does the district court's interpretation of § 3623 render the "prior to his release" language "superfluous." Br. 14 (quotations omitted) (contending that it is "obvious" that BOP could not "'transfer' a prisoner to State custody *after* he has been set free"). Congress was free to ensure that BOP would entertain and decide state transfer requests while an inmate remained in BOP custody; such specification does not warrant reading terms like "immediately prior to release upon the expiration of a federal sentence" into the statute. Further, § 3623 makes clear that BOP should consider state transfer requests and make any resultant transfers "prior to [an inmate's] release *from a Federal prison facility*." 18 U.S.C. § 3623 (emphasis added). The statute thus instructs BOP to effectuate any transfers before an inmate is released from a particular form of federal custody: confinement in a "Federal prison facility." The statute contemplates other forms of federal custody, such as "home confinement" and time in a "community correctional facility" (commonly called a halfway house). *Id.* § 3624(c). Thus, even

24

Hanson's proposal (Br. 16-17) to equate "release" under § 3623 with "release" upon the expiration of a federal sentence as provided for in §§ 3621 and 3624 cannot be reconciled with the statutory text.

**2.**  Hanson's proposal to engraft a requirement on to § 3623 that a federal prisoner complete his federal sentence before BOP may transfer him to state custody is equally at odds with the history and implementation of the statute and its predecessor authorities.  As the district court recognized, § 3623 reflects Congress's codification of the century-plus-old recognition that the Executive Branch has the discretion to yield its "primary custody to another sovereign" if it so chooses.  ROA 640; *see supra* pp. 15-18.  Neither that discretion nor the language of § 3623 codifying it has ever been understood to be limited to the last days or weeks in which the Executive Branch may hold an inmate pursuant to a federal sentence, as Hanson's reading would do.

To the contrary, courts have repeatedly acknowledged such discretion regardless of how much time a federal prisoner has left on his federal sentences, including where the state wished to impose a death sentence.  *See, e.g., Poland v. Stewart*, 117 F.3d 1094, 1097 (9th Cir. 1997) (rejecting prisoner's contention "that he cannot be executed by Arizona until his federal sentence has 'expired'"); *Moody*, 887 F.3d at 1283, 1290 (holding that the United States could "waive its primary custody" over a prisoner who had previously been federally sentenced to a life sentence "for the purpose of [Alabama] carrying out the death sentence" it had later imposed); *United States ex rel. Buchalter v. Warden of Sing Sing Prison*, 141 F.2d 259, 259 (2d Cir. 1944) (allowing the Attorney

25

General to "surrender[] custody of the prisoner to the state authorities for execution" even though the execution would mean he "will never serve the remainder of his federal sentence, which has not been commuted"); *cf. Kelley v. Oregon*, 273 U.S. 589, 593 (1927) ("The penitentiary is no sanctuary, and life in it does not confer immunity from capital punishment provided by law.  He has no vested constitutional right to serve out his unexpired sentence."). Hanson's attempts to distinguish *Moody* and similar cases on the ground that they do not discuss BOP's transfer authority under § 3623 miss the mark: § 3623 "codifi[ed]" the Executive's longstanding power to effect transfers between sovereigns, ROA 640; *Trigg*, 433 F.2d at 367, rather than limiting it with the implicit temporal requirement Hanson urges.

Similarly, this Court has repeatedly acknowledged the Executive's discretion to waive primary jurisdiction over an inmate without indicating any temporal limitation like the one Hanson seeks to read into § 3623. *See Hayward v. Looney*, 246 F.2d 56, 57 (10th Cir. 1957) (explaining that "[e]ither the Federal or a state government may voluntarily surrender its prisoner to the other" and that "[i]f the prisoner has violated the law of both sovereigns, … he may not complain of or choose the manner or order in which each sovereign proceeds against him"); *Hall v. Looney*, 256 F.2d 59, 60 (10th Cir. 1958) (holding that "the sovereign having the prior jurisdiction and the right to custody may waive that right and permit another sovereign to proceed with its prosecution and the execution of sentence"); *Hernandez v. U.S. Attorney Gen.*, 689 F.2d 915, 918-19 (10th Cir. 1982) (similar).

Hanson's suggestion that BOP has implemented 18 U.S.C. § 3623 in a way that limits it to transfers at the end of a federal sentence is meritless. As an initial matter, this Court need not resort to BOP internal guidance to discern the plain meaning of the statutory text; it is Hanson, not the federal appellants who seek to limit this Court's ability to interpret § 3623 by reference to a purported agency interpretation. *See* Br. 22-25, 30-32 (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024)).[5] In any event, BOP guidance does not aid Hanson's cause. Although BOP's internal guidance states that transfer "ordinarily" takes place "within the last 90 days" of an inmate's federal sentence, ROA 38-39, BOP has never construed § 3623 to *prevent* it from transferring an inmate sooner than that, especially where the BOP Director (or the Attorney General exercising her authority under 28 U.S.C. §§ 509 and 510) has concluded that a transfer would serve the public interest.

Finally, Hanson misconstrues the district court's order in earlier litigation regarding BOP's discretion over his transfer under 18 U.S.C. § 3623. In *Oklahoma v. Tellez*, No. 7:22-cv-00108-O, 2022 WL 17686579 (N.D. Tex. Dec. 13, 2022), the district court rejected Oklahoma's attempt to force BOP to immediately transfer Hanson upon the state's request. Contrary to Hanson's contention, the *Tellez* court did not conclude that § 3623's phrase "prior to his release" "negated any *authority* to immediately transfer

---

[5] The Supreme Court's holding in *Loper Bright* does not, of course, alter courts' obligations to confine *ultra vires* review to only instances of "blatant" or "patent" misconstruction of the relevant statute.

Mr. Hanson." Br. 13 (emphasis added) (alteration and quotations omitted). Instead, the court explained that it was not "persuaded" that the statutory language—including the reference to transfer of a prisoner "prior to his release"—should be read to "*compel[]* immediate transfer where the other statutory requirements have been satisfied." *Tellez*, 2022 WL 17686579, at *3 (emphasis added).

**3.** Hanson's reading of 18 U.S.C. § 3623 also defies common sense. Under his interpretation, BOP could transfer those prisoners with finite federal sentences to states for the imposition of capital sentences, while—as he concedes—§ 3623 would effectively immunize those prisoners with federal *life* sentences from capital punishment by the states. *See* Br. 20. Hanson identifies nothing to support his insistence that Congress's handiwork in § 3623 requires that startling result, insulating only those offenders whose crimes are sufficiently terrible to draw some of the most serious penalties from both federal and state courts. Nor could he, given federal courts' unbroken recognition that "[t]he penitentiary is not a place of sanctuary." *Poland*, 117 F.3d at 1098 (quoting *Ponzi*, 258 U.S. at 264).

That is not the only anomaly Hanson's interpretation of § 3623 would create. Section 3623 permits BOP to transfer "a prisoner *who has been charged in an indictment or information* with, or convicted of, a State felony" to state custody. 18 U.S.C. § 3623 (emphasis added). It is thus not limited to transfers of those *convicted* of a state felony. But the statute's "prior to his release" language applies to all transfers under § 3623. Hanson gives no reason why his proposal to read that language to impose a "temporal

requirement" limiting BOP's ability to transfer to the time when "a federal prisoner ha[s] complete[d] his federal sentence," Br. 33, would not apply in all circumstances in which a state sought a transfer. Hanson briefly suggests that he "remained in the federal government's custody during [his] temporary returns to Oklahoma" to stand trial. Br. 2. But § 3623 does not distinguish between BOP transfers for temporary stints to participate in state-court proceedings and BOP transfers for implementation of a state sentence. All transfers under § 3623, whether pursuant to an agreement to return the inmate to the federal facility or not, are subject to the "prior to his release" language on which Hanson pins his argument. Thus, the logical result of Hanson's reading would hamstring federal officials from transferring federal inmates to even stand trial for state crimes; so long as a prisoner's federal sentence was not nearing completion, the federal government would be powerless to cooperate with states wishing to vindicate their own interests in securing prompt convictions.

## CONCLUSION

For the foregoing reasons, the Court should dismiss federal appellees as named respondents to Hanson's habeas petition and affirm the judgment of the district court dismissing his complaint.

Respectfully submitted,

*Of Counsel:*

ELISA MASON
*Acting Assistant Director/General Counsel*

RENEE B. FORNSHILL
*Associate General Counsel*

ANDREW HAMILTON SMITH
*Assistant General Counsel*
*Federal Bureau of Prisons*
*U.S. Department of Justice*
*320 First Street, NW Suite 977*
*Washington, DC 20534*
*(202) 353-8165*
*a20smith@bop.gov*

YAAKOV M. ROTH
*Acting Assistant Attorney General*

CHRISTOPHER J. WILSON
*United States Attorney*

MELISSA N. PATTERSON

*s/ Amanda L. Mundell*
AMANDA L. MUNDELL
*Attorneys, Appellate Staff*
*Civil Division, Room 7252*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3469*
*Amanda.L.Mundell@usdoj.gov*

JUNE 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7528 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.


*s/ Amanda L. Mundell*
Amanda L. Mundell

**ADDENDUM**

# TABLE OF CONTENTS

18 U.S.C. § 3621 ................................................................................................ A1

18 U.S.C. § 3623 ................................................................................................ A2

18 U.S.C. § 3624 ................................................................................................ A2

18 U.S.C. § 3625 ................................................................................................ A4

18 U.S.C. §§ 3621, 3623, 3624, & 3625

## § 3621. Imprisonment of a convicted person

(a)  Commitment to Custody of Bureau of Prisons.—

A person who has been sentenced to a term of imprisonment pursuant to the provisions of subchapter D of chapter 227 shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed, or until earlier released for satisfactory behavior pursuant to the provisions of section 3624.

(b)  Place of Imprisonment.—The Bureau of Prisons shall designate the place of the prisoner's imprisonment, and shall, subject to bed availability, the prisoner's security designation, the prisoner's programmatic needs, the prisoner's mental and medical health needs, any request made by the prisoner related to faith-based needs, recommendations of the sentencing court, and other security concerns of the Bureau of Prisons, place the prisoner in a facility as close as practicable to the prisoner's primary residence, and to the extent practicable, in a facility within 500 driving miles of that residence. The Bureau shall, subject to consideration of the factors described in the preceding sentence and the prisoner's preference for staying at his or her current facility or being transferred, transfer prisoners to facilities that are closer to the prisoner's primary residence even if the prisoner is already in a facility within 500 driving miles of that residence. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence—

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

(B) recommending a type of penal or correctional facility as appropriate; and

(5)  any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

A1

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse. Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person. Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court.

\* \* \*

## § 3623.  Transfer of a prisoner to State authority

The Director of the Bureau of Prisons shall order that a prisoner who has been charged in an indictment or information with, or convicted of, a State felony, be transferred to an official detention facility within such State prior to his release from a Federal prison facility if—

(1) the transfer has been requested by the Governor or other executive authority of the State;

(2) the State has presented to the Director a certified copy of the indictment, information, or judgment of conviction; and

(3) the Director finds that the transfer would be in the public interest.

\* \* \*

## § 3624.  Release of a prisoner

(a)  Date of Release.—

A prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence as provided in subsection (b). If the date for a prisoner's release falls on a Saturday, a Sunday, or a legal holiday at the place of confinement, the prisoner may be released by the Bureau on the last preceding weekday.

\* \* \*

(c)  Prerelease Custody.—

(1) In general.—

A2

The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

(2) Home confinement authority.—

The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.

(3) Assistance.—

The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during prerelease custody under this subsection.

(4) No limitations.—

Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.

(5) Reporting.—

Not later than 1 year after the date of the enactment of the Second Chance Act of 2007 (and every year thereafter), the Director of the Bureau of Prisons shall transmit to the Committee on the Judiciary of the Senate and the Committee on the Judiciary of the House of Representatives a report describing the Bureau's utilization of community corrections facilities. Each report under this paragraph shall set forth the number and percentage of Federal prisoners placed in community corrections facilities during the preceding year, the average length of such placements, trends in such utilization, the reasons some prisoners are not placed in community corrections facilities, and number of prisoners not being placed in community corrections facilities for each reason set forth, and any other information that may be useful to the committees in determining if the Bureau is utilizing community corrections facilities in an effective manner.

(6) Issuance of regulations.—The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Reauthorization Act of 2018, which shall ensure that placement in a community correctional facility by the Bureau of Prisons is—

A3

(A) conducted in a manner consistent with section 3621(b) of this title;

(B) determined on an individual basis; and

(C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

\*   \*   \*

## § 3625.  Inapplicability of the Administrative Procedure Act

The provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter.