UNITED STATES COURT OF APPEALS FOR THE
TENTH CIRCUIT

JOHN FITZGERALD HANSON,

*Appellant/Petitioner*,

v.

CHRISTE QUICK, Warden, et al.,

*Appellees/Respondents*.

Case No. 25-7044

CAPITAL CASE

EXECUTION JUNE 12, 2025
AT 10:00 AM CDT

---

## RESPONDENTS/APPELLEES CHRISTE QUICK AND STEVEN HARPE'S[1] OBJECTION TO APPELLANT'S REQUEST FOR STAY OF EXECUTION (DOC. 30)

In 1999, John Fitzgerald Hanson ("Petitioner")—along with his accomplice Victor Miller ("Miller")—carjacked and kidnapped 77-year-old Mary Bowles from the Promenade Mall in Tulsa. They drove her in her own Buick LeSabre to an isolated dirt pit in Owasso, Oklahoma. After shooting the dirt pit owner, Jerald Thurman, they drove Ms. Bowles a quarter mile down the road. There, Petitioner dragged Ms. Bowles from the vehicle and shot her 4 to 6 times. He then left her to

---

[1] The undersigned counsel represent Warden Quick and Director Harpe (hereinafter "Oklahoma Respondents") and present this response on their behalf.

rot in a roadside ditch. For his heinous murder of Ms. Bowles, Petitioner was sentenced to death.

Petitioner is scheduled for execution on June 12, 2025, at 10:00 a.m. CDT. On June 2 he filed an application for a stay of execution, seeking to have his execution stayed while he appeals the denial of his combined complaint/28 U.S.C. § 2241 motion seeking hybrid habeas corpus, declaratory, and injunctive relief. (Doc. 30). This motion for a stay should be denied because Petitioner cannot meet any of the requirements for a stay. *Nken v. Holder*, 556 U.S. 418, 426 (2009) (enumerating requirements for a stay). For starters, he cannot show a likelihood of success on the merits. *Id*. Further, any claim of irreparable harm to Petitioner from a denial of a stay, and the balancing of the equities, are inextricably tied to the merits. Thus, Petitioner fails for this reason as well. *Id.* Moreover, the All Writs Act is inapplicable. Accordingly, Petitioner's request for a stay should be denied for the reasons discussed herein.

## INTRODUCTION AND PROCEDURAL HISTORY

Prior to his convictions in state court, Petitioner was convicted of numerous federal charges, receiving sentences of life plus 984 months imprisonment in Northern District of Oklahoma Case No. 99-CR-125-002-C. The United States then transferred Petitioner to Oklahoma where he was convicted of these murders before being returned to federal prison. ROA 13. The Oklahoma Court of Criminal Appeals

("the OCCA") affirmed his murder convictions, and his life without parole sentence for Jerald Thurman's murder. With respect to his death sentence for the murder of Ms. Bowles, the OCCA found errors which warranted a capital resentencing trial. *Hanson v. State*, 72 P.3d 40, 55 (Okla. Crim. App. 2003). The United States again transferred Petitioner to Oklahoma for resentencing. ROA 13. After his resentencing jury sentenced him to death in January 2006, Petitioner was returned to federal prison at his request and in compliance with Oklahoma law. The OCCA affirmed his death sentence on April 13, 2009, and Petitioner's subsequent pursuit of federal habeas relief failed. *See Hanson v. State*, 206 P.3d 1020, 1033-36 (Okla. Crim. App. 2009), *cert. denied*, *Hanson v. Oklahoma*, 558 U.S. 1081 (2009); *Hanson v. Sherrod*, No. 10-CV-0113-CVE-TLW, 2013 WL 3307111 (N.D. Okla. July 1, 2013) (unpublished), *aff'd*, *Hanson v. Sherrod*, 797 F.3d 810, 824 (10th Cir. 2015), *cert. denied*, *Hanson v. Sherrod*, 578 U.S. 979 (2016).

As of May 16, 2016, no legal impediment to Petitioner's execution remained. But on June 1, 2016, the OCCA declined to set a date for Petitioner's execution because of an ongoing investigation into Oklahoma's lethal injection protocol. Once the Western District of Oklahoma affirmed the constitutionality of the State's protocol, *Glossip v. Chandler*, No. CIV-2014-665-F, 2022 WL 1997194 (W.D. Okla. June 6, 2022) (unpublished), the OCCA issued an Order setting Petitioner's execution date for December 15, 2022. In preparation for that execution, the State

unsuccessfully sought to have Petitioner transferred from federal custody back to Oklahoma. *Oklahoma v. Tellez*, No. 7:22-CV-108-O, 2022 WL 17686579, at *2 (N.D. Tex. Dec. 13, 2022) (unpublished). In short, the United States (at the time) claimed justice for Mary Bowles was not in the public interest and the federal district court found that it lacked the authority to review a decision under 18 U.S.C. § 3623.

On January 23, 2025, the State again requested that Petitioner be transferred back to Oklahoma. ROA 28-29. Less than a week later, Petitioner sued and moved for emergency injunctive relief in the U.S. District Court for the Western District of Louisiana. *Hanson v. Drummond*, No. 25-cv-102, 2025 WL 636319, at *2 (W.D. La. Feb. 27, 2025) (unpublished). The magistrate judge recommended a temporary injunction preventing Petitioner's transfer. *Hanson v. Drummond*, No. 25-CV-102, 2025 WL 819656, at *3 (W.D. La. Jan. 31, 2025). While the suit was pending before the district court, U.S. Attorney General Pam Bondi issued a "Memorandum for the Acting Director of the Federal Bureau of Prisons," ordering that Petitioner be transferred back to Oklahoma. ROA 45-46. In that memo, General Bondi explained that his transfer was "in the public interest" because he "viciously murdered an innocent woman." ROA 45. On February 27, 2025, the district court rejected the magistrate judge's report and recommendation and dismissed Petitioner's lawsuit, explaining the matter was not yet ripe because the Federal Bureau of Prisons ("BOP") had not responded to General Drummond's request. *Hanson*, 2025 WL

4

636319, at *3. Further, the court stated that even if the claim were justiciable, "it is **_doubtful_** that the court would grant the requested relief." *Id.* (Emphasis added). Petitioner was transferred to Oklahoma the following day, given the lack of any legal impediment, and he has been incarcerated at Oklahoma State Penitentiary since that time. ROA 50.

Shortly after being transferred back to Oklahoma, Petitioner filed a "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Complaint for Declaratory and Injunctive relief" challenging his transfer. ROA 6-26. Petitioner argued in Count One that he was entitled to a writ of habeas corpus because the BOP violated § 3623 by "(1) considering factors other than the public interest when granting transfer,"[2] and "(2) transferring [Petitioner] before the end of his federal sentence." ROA 19-20. In Count Two, he argued that the Bureau of Prisons committed an *ultra vires* violation of § 3623 by transferring him "without notice and opportunity . . . to re-urge his complaint[.]" ROA 22. Petitioner sought declaratory relief in Count Three, because his transfer was "in violation of the law." ROA 23. Finally, Petitioner argued Oklahoma had waived jurisdiction over him "due to a lack of pursuit and inaction" between 2006 and 2022. ROA 23-25.

The State filed a response on April 4, 2025. ROA 174-224. There, the State argued that the petition should be dismissed because it was untimely, Petitioner

---

[2] Petitioner has abandoned this allegation, which was never supported. (Doc. 29-1).

lacked standing, and the petition was an improper second and successive habeas petition. ROA 192-201, 220-22. Further, the State argued that Petitioner does not have a liberty interest in serving his federal life sentence, and that his transfer was proper under 18 U.S.C. § 3623. ROA 198-218. Moreover, the State argued that it did not waive jurisdiction over Petitioner. ROA 220-23. While this was pending, Petitioner was denied a clemency recommendation at the conclusion of his May 7 clemency hearing.

Below, the magistrate judge recommended the petition and Petitioner's Motion for Stay of Execution be denied. ROA 579-610. Petitioner filed an objection to the magistrate judge's recommendations on May 22. ROA 620-30. The district court adopted the magistrate judge's recommendations on May 27, denying all requested relief. ROA 637-46.

Now Petitioner has filed with this Court a combined motion for a Certificate of Appealability ("COA")/opening brief and motion to stay his June 12 execution. (Docs. 29-1, 30). This Court's May 30 Order (Doc. 8) directs Respondents to file "any response brief(s)" by 3:00 p.m. MDT on Wednesday, June 4, 2025. In this objection, Oklahoma Respondents explain why Petitioner fails to meet any of the requirements for a stay.

# **ARGUMENT**

Petitioner seeks a stay of his execution nearly twenty-six years after he murdered Mary Bowles in cold blood. An inmate seeking a stay of execution pending appeal must show: (1) he is substantially likely to succeed on the merits, (2) he is likely to suffer irreparable injury if the court denies the injunction, (3) the threatened injury, absent the injunction, outweighs the State's injury from the injunction, and (4) the injunction is not adverse to the public interest. *Nken*, 556 U.S. at 426. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken*, 556 U.S. at 433-34. Moreover, in the execution context, the decision whether to grant a stay "must be sensitive to the State's strong interest in enforcing its criminal judgments." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). "Both the State and the victims of crime have an important interest in the timely enforcement of a sentence." *Id.* Last-minute execution stays are especially disfavored. *See Dunn v. Price*, 587 U.S. 929, 929 (2019). Further, "there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Nelson v. Campbell*, 541 U.S. 637, 650 (2004).

This Court reviews a district court's denial of a stay of execution for an abuse of discretion. *Hamilton v. Jones*, 472 F.3d 814, 815 (10th Cir. 2007). Thus, this Court

will reverse "only upon a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Luo v. Wang*, 71 F.4th 1289, 1297 (10th Cir. 2023) (internal quotations and citation omitted). A district court also abuses its discretion when it "'commits a legal error or relies on clearly erroneous factual findings, or where there is no rational basis in the evidence for its ruling.'" *Id*. (quoting *Cruz v. Farmers Ins. Exch.*, 42 F.4th 1205, 1210 (10th Cir. 2022)).

Here, Petitioner has failed to show that the district court abused its discretion.

## I. Petitioner is not entitled to a stay of execution.

The district court concluded that Petitioner was not entitled to a stay of execution. ROA 643-44. Because Petitioner fails to meet any of the factors warranting a stay, this decision was correct, and this Court should similarly deny a stay.

### A. Petitioner cannot show a likelihood of success on the merits.

As discussed *supra*, an inmate must first make a "strong showing" that he is likely to succeed on the merits. *Nken*, 556 U.S. at 426. Petitioner comes nowhere close to such a showing. He argues that his transfer before expiration of his federal sentence violated 18 U.S.C. § 3623, and his due process rights were violated where the State did not seek his transfer from 2006 through 2022. (Doc. 30 at 2-4). But Petitioner's transfer is entirely consistent with the text of § 3623. Indeed, Petitioner

does not challenge the BOP's critical determination that his transfer was in the public interest. *See* (Doc. 29-1 at 44).

Respondents' response brief (filed contemporaneously with this objection) fully addresses the merits of Petitioner's claims. For purposes of this objection, Respondents will discuss the most succinct, direct reasons Petitioner's claims are unlikely to succeed.

### *(1) Petitioner's transfer was consistent with § 3623.*

Any claim that Petitioner's transfer violated 18 U.S.C. § 3623 wholly misreads the text of the statute. It mandates that the BOP "shall order" an inmate's transfer if the transfer "has been requested by the Governor or other executive authority of the State," and the State presents a "certified copy of the indictment, information or judgment of conviction." 18 U.S.C. § 3623(1)-(2). Here, these requirements for transfer were met as the Attorney General of Oklahoma requested Petitioner's transfer and provided the requisite documents. ROA 28-35. Moreover, the only other numbered requirement is that "the Director finds that the transfer is in the public interest." 18 U.S.C. § 3623(3). This requirement was indisputably met, as the acting BOP director concluded it was in the public interest to transfer Petitioner back to Oklahoma. ROA 47. The statute mandates that an inmate be transferred where these three requirements are met, stating that the Director "shall" order an inmate transferred. 18 U.S.C. § 3623; *see also Alabama v. Bozeman*, 533 U.S. 146,

153 (2001) ("the word 'shall' is ordinarily the language of command."). And that is exactly what happened.

Petitioner's argument that the statute's prefatory phrase—"prior to his release"—forever prohibits his transfer because he has a life sentence, misreads the statute and defies common sense. "[S]tatutory interpretation begins with the language of the statute itself." *In re Lehman*, 205 F.3d 1255, 1255-56 (11th Cir. 2000). This Court may look beyond the text only if the statute is ambiguous. *In re Taylor*, 899 F.3d 1126, 1131 n.2 (10th Cir. 2018). Section 3623 is not ambiguous. As described above, it explicitly spells out three—and only three—numbered requirements for transfer. The phrase upon which Petitioner relies—"prior to his release"—is commonsense prefatory language that means what it says and no more.

This Court must "follow the cardinal rule that statutory language must be read in context [since] a phrase gathers meaning from the words around it." *Knapp v. U.S. Dep't. of Agric.*, 796 F.3d 445, 446 (5th Cir. 2015) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). This Court will also seek to avoid absurd results. *Taylor*, 899 F.3d at 1131 n.2. Here, Petitioner's interpretation violates the context of the statute and produces a truly absurd result that would result in the nullification of a death sentence solely because a criminal committed federal crimes worthy of a life sentence.

Textually, Petitioner *was* transferred "prior to his release." There is no other possibility, as he was not transferred at or during his release, and he could not logically be transferred after a release. *See Prior*, Merriam-Webster Online (defining "prior" as "earlier in time or order");[3] *see also, e.g.*, *Prior*, Webster's Ninth New Collegiate Dictionary (9th ed. 1983). Petitioner argues he will never be released from federal prison, ergo he cannot be transferred. But this ignores that *every* relevant release is hypothetical. That is the intrinsic nature of the phrase "prior to"—it means a release is being discussed that has not happened yet and therefore may not happen for any number of reasons. (A prisoner could commit another crime before release, he could die before release, etc.) In addition, once the transfer occurs that is contemplated by § 3623, the relevant release *will never happen*. The whole point of the § 3623 enterprise is to transfer an inmate instead of release him. And even Petitioner implicitly admits that his own federal release was hypothetically possible; he just claims it was not "foreseeable." ROA 20. Petitioner, for example, could have received a pardon or commutation in the future, and been released. For all these reasons, Petitioner's transfer plainly occurred "prior to his release."

Contextually, the entirety of § 3623 indicates that the phrase "prior to his release" refers to when the statutory criteria apply and is not a loophole around them. Section 3623 has two parts that are relevant here: a prefatory phrase, and a list of

---

[3] https://www.merriam-webster.com/dictionary/prior.

numbered criteria. The prefatory phrase commands that federal government "*shall*" transfer an inmate "prior to his release" "if" certain conditions are met. The list of numbered criteria provides the primary conditions on which the "shall" command applies, with references to "*the* transfer" that indicate the criteria used to assess a particular request.

Put differently, as should be clear from a simple read-through of the statute, the term "prior to his release" in § 3623 is a commonsense description of when the statute applies that encourages the federal government to act promptly, not a tool to frustrate transfers otherwise commanded or approved by the statute. Had Congress wanted to place the weight on that phrase that Petitioner demands—weight that would allow a court to override both the United States and Oklahoma's positions— Congress would have included it as a numbered criteria and spelled out that "prior to his release" means that no prisoner under a life sentence can ever be transferred.

Congress, though, "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." *Gonzales v. Oregon*, 546 U.S. 243, 267 (2006) (quoting *Whitman v. Am. Trucking Assns., Inc.*, 531 U.S. 457, 468 (2001)). But that is exactly what Petitioner's position entails. According to him, tucked away in the passing phrase "prior to his release," in a statute entitled "Transfer of a prisoner to State authority" that makes transfers mandatory ("shall"), Congress banned the federal

government from ever transferring a prisoner serving a life sentence for a federal crime, even when a state death sentence would be nullified as a result. This cannot possibly be the correct reading of § 3623. Among other things, this reading would reward Petitioner for committing additional crimes that could be charged by the federal authorities. Under his logic, that is, the other murderous inmates on Oklahoma's death row should also have committed armed bank robberies in order to avoid Oklahoma's death penalty. This would be an absurd result.

Petitioner is not likely to establish that his transfer violated § 3623.

### (2) The transfer did not violate Petitioner's due process rights.

Additionally, Petitioner's argument that the State somehow waived jurisdiction by failing to request his transfer while it was still litigating his claims from 2006 to 2022 could not be further from the truth. (Doc. 30 at 3-4). To begin, he provides zero support for this claim. (Doc. 30 at 3-4). Further, such a claim ignores that the State of Oklahoma was zealously litigating his case between 2006 and 2022. *Hanson*, 2013 WL 3307111, at *40; *Hanson*, 797 F.3d at 853. Further, Petitioner was also part of the failed constitutional challenge to Oklahoma's execution protocol, which the State litigated for years. *Glossip*, No. CIV-14-0665-F, at *21. Moreover, at the conclusion of his sentencing hearing in his resentencing trial, Petitioner asked that he be transferred back to federal custody, and he cannot now fault the State for failing to seek his return until his numerous appeals and

challenges were exhausted. ROA 230. This is the opposite of negligence or a lack of interest. *See Piper v. Estelle*, 485 F.2d 245, 246 (5th Cir. 1973) (rejecting similar challenge, concluding the due process doctrine "was not intended to constitute a trap for unwary state officials.").

For all the foregoing reasons, and as elaborated on in Appellees' response brief, Petitioner has failed to show a substantial likelihood of success on the merits.

**B. Petitioner cannot show a likelihood of irreparable harm, that the balance of equities weighs in his favor, or that his requested stay would not be adverse to the public interest.**

Petitioner also fails to meet his burden on the other three factors, and he is therefore not entitled to a stay for these reasons as well. Even assuming Petitioner could show any likelihood of success on the merits, he must also show (2) he is likely to suffer irreparable injury if this Court denies a stay; (3) his threatened injury, absent the stay, outweighs the State's injury from the stay; and (4) the injunction is not adverse to the public interest. *Nken*, 556 U.S. at 426; *Hill*, 547 U.S. at 584. Petitioner again fails to meet any of these.

> *(1) Petitioner's meritless claims are insufficient to show irreparable harm.*

Petitioner argues irreparable harm will result because he will be executed without a stay. (Doc. 30 at 4). But his argument presupposes that this Court cannot decide his claims quickly, leaving time for any litigation in the Supreme Court before his execution date. This Court *sua sponte* issued an order directing the filing of all

pleadings in just a matter of days, indicating its intent to resolve this litigation expeditiously. (Doc. 8). This Court is no stranger to such last-minute litigation and has resolved appeals filed much closer to an execution date without issuing a stay. Petitioner has failed to show he needs a stay of execution to avoid irreparable harm.

Further, Petitioner ignores that he cannot show irreparable harm from the denial of a stay where, as here, he cannot succeed on the merits. The magistrate judge concluded as much in recommending that the district court motion for stay be denied. ROA 604-07. Moreover, such a conclusion is supported by the Supreme Court's decision in *Hill*. Specifically, the Court in *Hill* stated unequivocally in analyzing this factor that "inmates seeking [a stay] must . . . show[] a significant possibility of success on the merits." *Hill*, 547 U.S. at 584. Here, because Petitioner's underlying claims are utterly meritless, he cannot meet his burden of showing irreparable injury just because he will be executed. While execution is the ultimate punishment, that sentence was well earned when Petitioner kidnapped and brutally executed a 77-year-old Tulsa woman by shooting her numerous times as she lay immobile on the ground. *Nken*, 556 U.S. at 426. Indeed, "in the eyes of the law, [Petitioner] does not come before th[is] [C]ourt as one who is innocent, but on the contrary, as one who has been convicted by due process of law of [a] brutal murder[]." *Herrera v. Collins*, 506 U.S. 390, 399-400 (1993). Furthermore, his reliance on *Wainwright v. Booker*, 473 U.S. 935, 935 n.1 (1985), (Doc. 30 at 4-5), is misplaced because there the Court

*granted* the State of Florida's application to vacate the stay of execution granted by the Eleventh Circuit. Thus, because Petitioner has not presented a meritorious claim, he cannot show irreparable harm merely because he faces his well-earned execution. *Hill*, 547 U.S. at 584. Accordingly, he fails to meet his burden on the second factor as well.

> *(2) Petitioner's threatened injury does not outweigh the resulting injury to the State if he is granted a stay.*

For similar reasons, Petitioner also fails to show that his threatened injury outweighs the injury to the State if he receives a stay. He argues that there have been many delays attributable to the State in this case, and the State "should not be heard to complain of a short delay" now. (Doc. 30 at 5). He provides a wholly out of context transcript citation from his failed execution protocol case, which Respondents addressed in their Motion in Opposition to the Stay in the district court. ROA 616. Specifically, Oklahoma Respondents noted that there was a delay *to obtain the necessary drugs*, but once executions were ready to resume Petitioner and his cohorts filed a lawsuit challenging the constitutionality of the new protocol, leading to more delays. Further, the magistrate judge's recommendation, as adopted by the district court, noted the State's potential injury, concluding that such far outweighed Petitioner's threatened injury. ROA 606 (concluding "[a] stay at this stage would impose additional burdens, costs, and delays upon the state and would frustrate the finality long sought by the victim's loved ones."). Indeed, as

16

Respondents have already discussed, a court's decision on whether to grant a stay must be "sensitive to the State's strong interest in enforcing its criminal judgments." *Hill*, 547 U.S. at 584. This is because both the State and the victims "have an important interest in the timely enforcement of a sentence." *Id.*; *see also Johnson*, 2025 WL 1423343, at *5 (same). Thus, last minute stays are "the extreme exception, not the norm." *Bucklew*, 587 U.S. at 150.

The State's interests would be harmed by further delay in this case. Furthermore, Petitioner ignores the injury to the family of Mary Bowles from another stay. Ms. Bowles was brutally murdered mere hours after she volunteered in the Neonatal Intensive Care Unit at Saint Francis Hospital, and Petitioner has evaded justice for this crime for more than twenty-five years. Ms. Bowles's body was found in such an advanced state of decomposition—after Petitioner left her in a road-side ditch like trash—that her family had to confront the reality that they could not even view her body. ROA 515. Further, Mary's family has been "worn out" by "multiple trials, re-trials, and appeals" over the last quarter-century, leaving them "angry with the machinations of the judicial system," and "ready to be done with this matter." ROA 516. To grant a stay for such meritless claims is precisely the type of harm federal courts are loathe to impose on the State and the victims' families in death penalty cases. *Wainwright*, 473 U.S. at 937 (Powell, J., concurring) ("For our system of justice to function effectively, litigation in cases such as this . . . must cease when

there is **no reasonable ground** for questioning either the guilt of the defendant or the constitutional sufficiency of the procedures employed to convict him.") (emphasis added). Accordingly, Petitioner fails to meet his burden on this prong as well.

*(3) A stay would be against the public interest.*

Petitioner argues that "[t]he public interest is not served by executing someone before they have had a full and fair opportunity to avail themselves of legal process." (Doc. 30 at 6). Here, Petitioner has been allowed to "avail [himself] of legal process" for nearly twenty-six years. And for similar reasons to those the State already discussed, any stay would be against the public interest. This is particularly so where Petitioner presents such meritless claims. As the magistrate judge concluded, "[t]he public has an interest in the consistent and predictable enforcement of criminal judgments[.]" ROA 606. This is especially so where such judgments have been affirmed over decades of judicial review, as the Supreme Court has recognized. *Hill*, 547 U.S. at 584. The people of Oklahoma and the families of the victims of Petitioner's crimes "deserve better," especially when Petitioner's justifications for a stay are entirely without merit. *Bucklew*, 587 U.S. at 150. The cases relied on by Petitioner in support of this argument are inapposite because they involved potentially meritorious claims. (Doc. 30 at 6-7). That is not the case here for the many reasons already discussed. Thus, Petitioner has also failed to show that a stay

would not be against the public interest. *Rhoades v. Reinke*, 830 F. Supp. 2d 1046, 1071 (D. Idaho 2011) ("Continued delay compounds those uncertainties, expenses, and impacts, and therefore is not in the public interest.").

Therefore, because Petitioner has failed to meet his burden on any prong to show he is entitled to a stay, this Court should deny his request.

### C. Petitioner cannot use the All Writs Act to circumvent his inability to meet his burden on the four stay factors.

In an apparent effort to get around his inability to meet his burden on any of the stay factors, Petitioner also argues that this Court can stay his execution under the All Writs Act. (Doc. 30 at 7-10). The All Writs Act authorizes courts to "issue all writs necessary or appropriate in aid of [their] jurisdiction and agreeable to the usages and principles of law." 28 U.S.C. § 1651. In support, Petitioner relies on numerous inapplicable cases, many of which do not deal with the execution context. Even assuming these cases are relevant, his argument is unavailing.

For starters, Petitioner's reliance on *Lenhard v. Wolff*, 443 U.S. 1306 (1979) is misplaced. In *Lenhard*, Justice Rehnquist used the All Writs Act to issue a stay of execution merely so the full court could decide the issue of whether to grant *certiorari*. *Lenhard*, 443 U.S. at 1306. Further, Justice Rehnquist noted that if the full court were considering the stay request, he would vote to deny a stay. *Id.* at 1312. Justice Rehnquist essentially granted an administrative stay to permit the State to file a response and the full court to consider the petition at its next regularly

scheduled conference. *Lenhard* is wholly inapplicable.

Moreover, review of more recent cases addressing this issue refute Petitioner's claim. Indeed, the Sixth and Seventh Circuits have held that the All Writs Act cannot be used in the place of the traditional stay factors. *See Cooey v. Strickland*, 589 F.3d 210, 234 (6th Cir. 2009) ("[t]here is no reason why the All Writs Act can or should be used to thwart the proper application of the [stay] factors," and that there was "every reason to assume that the use of the Act in this way would **erode** the customary grounds for obtaining stays of execution."); *Lambert v. Buss*, 498 F.3d 446, 454 (7th Cir. 2007) (emphasis added) (same). Similarly, the Eleventh Circuit concluded even more recently that the All Writs Act does not "independently authorize a federal court to modify [an inmate's] execution date," absent "a showing that the traditional stay factors have been satisfied." *LeCroy v. United States*, 975 F.3d 1192, 1196-97 (11th Cir. 2020) Lower federal courts have reached the same conclusion. *See, e.g., Ringo v. Lombardi*, No. 09-4905-CV-C-NKL, 2009 WL 1406980, at *1 (W.D. Mo. 2009) (unpublished) ("the All Writs Act does not provide a basis for [staying] [petitioner's] execution unless the . . . factors justifying [a stay] have been independently satisfied."). As such, the All Writs Act does not apply here.

# CONCLUSION

Petitioner is not entitled to a stay because he fails to meet his burden on any of the four stay factors. Further, the All Writs Act is inapplicable. Therefore, his motion for a stay should be denied.

Respectfully Submitted,

s/ Michel A. Trapasso

GARRY M. GASKINS, II, OBA 20212
*Solicitor General*
ZACH WEST, OBA 30768
*Director of Special Litigation*


MICHEL A. TRAPASSO, OBA 35298
JENNIFER CRABB, OBA 20546
*Assistant Attorneys General*

OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Garry.Gaskins@oag.ok.gov
Zach.West@oag.ok.gov
Jennifer.Crabb@oag.ok.gov
Michel.Trapasso@oag.ok.gov

*Counsel for Oklahoma Respondents*

## CERTIFICATE OF COMPLIANCE

__X__      This response complies with the typeface requirements of Fed. R. App. P. 32 because it was prepared in a proportionally spaced font (Times New Roman, 14-point) using Microsoft Word 2016. The document complies with the type-volume limitation of Fed. R. App. P. 27, because it contains 5,143 words, excluding the parts exempted.

s/ MICHEL A. TRAPASSO

## CERTIFICATE OF SERVICE

**X**      I hereby certify that a copy of this Objection was electronically filed with the Clerk of this Court on June 4, 2025, and was served via the Court's CM/ECF filing system on the following registrants:

Hunter_Labovitz@fd.org
Tom_Hird@fd.org

s/ MICHEL A. TRAPASSO

## CERTIFICATE OF DIGITAL SUBMISSION

This is to certify that:

1. All required redactions have been made and, with the exception of those redactions, every document submitted in Digital Form or scanned PDF form is an exact copy of the document filed with the Clerk;

2. The digital submissions have been scanned for viruses with Symantec Endpoint Protection, Updated 6/4/25, and according to said program, are free of viruses.

s/ MICHEL A. TRAPASSO