Case No. 25-7044

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

JOHN FITZGERALD HANSON,
*Petitioner-Appellant,*
v.
CHRISTE QUICK, Warden,
*Respondent-Appellee.*

---

**RESPONDENTS/APPELLEES CHRISTE QUICK AND STEVEN HARPE'S COMBINED RESPONSE TO PETITIONER'S MOTION FOR A CERTIFICATE OF APPEALABILITY ON COUNT ONE AND RESPONSE TO PETITIONER'S OPENING BRIEF ON COUNTS TWO AND FOUR**

---

GENTNER F. DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA

GARRY M. GASKINS, II, OBA 20212
*Solicitor General*
ZACH WEST, OBA   30768
*Director of Special Litigation*
JENNIFER CRABB, OBA 20546
MICHEL A. TRAPASSO, OBA   35298
*Assistant Attorneys General*
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Garry.Gaskins@oag.ok.gov
Zach.West@oag.ok.gov
Jennifer.Crabb@oag.ok.gov
Michel.Trapasso@oag.ok.gov

*Counsel for Oklahoma Respondents*

June 4, 2025

<u>**TABLE OF CONTENTS**</u>

Page

**STATEMENT OF JURISDICTION** ....................................................................3

**ISSUES PRESENTED FOR REVIEW** ...............................................................4

**STATEMENT OF THE CASE** ............................................................................4

**STATEMENT OF THE FACTS** ..........................................................................9

**SUMMARY OF ARGUMENT** ..........................................................................11

**STANDARD OF REVIEW** ................................................................................13

**ARGUMENT AND AUTHORITY** .....................................................................14

    **PART ONE ("COA GROUND I")**

    **PETITIONER HAS FAILED TO IDENTIFY A
    CONSTITUTIONAL RIGHT AT ISSUE, MUCH
    LESS MAKE A SUBSTANTIAL SHOWING THAT
    SUCH A RIGHT WAS DENIED** ....................................................14

    **A. Petitioner cannot Obtain a COA for an Alleged
       Statutory Violation** ...............................................................15

    **B. Petitioner's Claim Fails Because of Standing,
       Timeliness, Exhaustion, 28 U.S.C. § 2254, the
       Second or Successive Petition Rule, Etc** ...............................16

       *1. Standing* .................................................................................16

       *2. Timeliness* ...............................................................................17

       *3. Exhaustion* .............................................................................18

       *4. 28 U.S.C. § 2254* ...................................................................19

       *5. Petitioner's Claim is Barred by 28 U.S.C. § 2244(b)(2)* ......20

       *6. Oklahoma Respondents are not Proper Respondents* ...........21

**C. Petitioner's Statutory Argument is Meritless** ......................................**22**

**PART ONE "COA GROUND II"**

**PETITIONER WAIVED ANY ARGUMENT
THAT FEDERAL COURTS MUST REVIEW
BOP "PUBLIC INTEREST" DETERMINATIONS.
FURTHER, PETITIONER'S CLAIM RESTS ON A
MISREADING OF *LOPER BRIGHT* AND THE
DISTRICT COURT'S DECISION** ............................................................**30**

**"PART TWO COUNT TWO"**

**THE DISTRICT COURT'S REJECTION OF
PETITIONER'S *ULTRA VIRES* CLAIM WAS
WITHIN ITS DISCRETION** ..................................................................**34**

**"PART TWO COUNT FOUR"**

**THE STATE DID NOT WAIVE THE RIGHT TO
EXECUTE ITS LAWFUL DEATH SENTENCE** ....................................**36**

**CONCLUSION** ......................................................................................**38**

**CERTIFICATE OF COMPLIANCE** ....................................................**40**

**CERTIFICATE OF SERVICE** ..............................................................**40**

**CERTIFICATE OF DIGITAL SUBMISSION** ......................................**40**

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alabama v. Bozeman,*
  533 U.S. 146 (2001) ..................................................................28

*Am. Sch. of Magnetic Healing v. McAnnulty,*
  187 U.S. 94 (1902) ...................................................................35

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy,*
  548 U.S. 291 (2006) ..................................................................27

*Armstrong v. Salinas,*
  No. 6:13-179-KKC, 2014 WL 340399 (E.D. Ky. Jan. 30, 2014) ......................22

*Blango v. Thornburgh,*
  942 F.2d 1487 (10th Cir. 1991) .......................................................37

*Boyce v. United States,*
  52 F. Supp. 115 (M.D. Pa. 1943)......................................................22

*Burger v. Scott,*
  317 F.3d 1133 (10th Cir. 2003) .......................................................17

*Causey v. Civiletti,*
  621 F.2d 691 (5th Cir. 1980) .........................................................22

*Chesteen v. Thaler,*
  No. 1:10CV106, 2010 WL 5830497 (E.D. Tex. Sept. 28, 2010) ......................18

*Conn. Nat'l Bank v. Germain,*
  503 U.S. 249 (1992) ..................................................................27

*Corley v. United States,*
  556 U.S. 303 (2009) ..................................................................27

*Delgado–Reynua v. Gonzales,*
  450 F.3d 596 (5th Cir. 2006) .....................................................34, 35

*Env't Integrity Project v. U.S. Env't Prot. Agency*,
  969 F.3d 529 (5th Cir. 2020) ...................................................................34

*Fed. Express Corp. v. U.S. Dep't of Com.*,
  39 F.4th 756 (D.C. Cir. 2022) ..................................................................35

*Fletcher v. Lengerich*,
  No. 23-1395, 2024 WL 1155260 (10th Cir. Mar. 18, 2024) ..............................19

*Glossip v. Chandler*,
  No. CIV-2014-665-F, 2022 WL 1997194 (W.D. Okla. June 6, 2022) ...............6

*Gonzales v. Oregon*,
  546 U.S. 243 (2006) ..................................................................................26

*Hanson v. Drummond*,
  No. 25-CV-102, 2025 WL 636319 (W.D. La. 2025) ...........................................6

*Hanson v. Drummond*,
  No. 25-CV-102, 2025 WL 819656 (W.D. La. 2025) ...........................................6

*Hanson v. Sherrod*,
  797 F.3d 810 (10th Cir. 2015) ....................................................................5

*Hanson v. Sherrod*,
  No. 10-CV-0113-CVE-TLW, 2013 WL 3307111
  (N.D. Okla. July 1, 2013) ......................................................................5, 20

*Hereford v. McCaughtry*,
  101 F. Supp. 2d 742 (E.D. Wis. 2000) ..........................................................18

*Hibbs v. Winn*,
  542 U.S. 88 (2004) ...................................................................................24

*Hill v. McDonough*,
  547 U.S. 573 (2006) ..................................................................................38

*In re Lehman*,
  205 F.3d 1255 (11th Cir. 2000) ..................................................................24

*In re Taylor*,
   899 F.3d 1126 (10th Cir. 2018) ........................................................................**24**

*Jordan v. Maxim Healthcare Servs., Inc.*,
   950 F.3d 724 (10th Cir. 2020) ..........................................................................**27**

*Kelley v. Oregon*,
   273 U.S. 589 (1927) ..............................................................................................**22**

*Knapp v. U.S. Dep't. of Agric.*,
   796 F.3d 445, (5th Cir. 2015) ............................................................................**24**

*Loper Bright Enterprises v. Raimondo*,
   603 U.S. 369 (2024) ................................................................. **12, 13, 30, 31, 32, 33**

*Lynch v. Standifird*,
   441 F. App'x 623 (10th Cir. Nov. 29, 2011)......................................................**19**

*Marx v. Gen. Revenue Corp.*,
   568 U.S. 371 (2013) ..............................................................................................**27**

*McIntosh v. U.S. Parole Comm'n*,
   115 F.3d 809 (10th Cir. 1997) ............................................................................**20**

*Miller-El v. Cockrell*,
   537 U.S. 322 (2003) ..............................................................................................**14**

*Montez v. McKinna*,
   208 F.3d 862 (10th Cir. 2000) .............................................................. **13, 18, 19**

*Moody v. Daggett*,
   429 U.S. 78 (1976) ......................................................................................... **11, 22**

*Moody v. Holman*,
   887 F.3d 1281 (11th Cir. 2018) ............................................................ **16, 20, 22**

*Morse v. United States*,
   267 U.S. 80 (1925) ................................................................................................**22**

*Oklahoma v. Tellez*,
  No. 7:22-CV-108-O, 2022 WL 17686579 (N.D. Tex. Dec. 13, 2022) .... 6, 23, 24

*Parker v. Champion*,
  148 F.3d 1219 (10th Cir. 1998) .....................................................37

*Piper v. Estelle*,
  485 F.2d 245 (5th Cir. 1973) ........................................................38

*Ponzi v. Fessenden*,
  258 U.S. 254 (1922) ................................................... 22, 29, 36

*Reno v. Koray*,
  515 U.S. 50 (1995) .......................................................................34

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
  314 F.3d 1180 (10th Cir. 2002) ....................................................14

*Toomer v. City Cab*,
  443 F.3d 1191 (10th Cir. 2006) ....................................................14

*U.S. ex rel. Buchalter v. Warden of Sing Sing Prison*,
  141 F.2d 259 (2d Cir. 1944) .........................................................22

*United States v. Barfield*,
  396 F.3d 1144 (11th Cir. 2005) ....................................................38

*United States v. Cepero*,
  224 F.3d 256 (3d Cir. 2000) .........................................................15

*United States v. Garfinkle*,
  261 F.3d 1030 (10th Cir. 2001) ............................................. 12, 31

*United States v. Gordon*,
  172 F.3d 753 (10th Cir. 1999) ......................................................15

*United States v. Hays*,
  515 U.S. 737 (1995) .....................................................................17

*United States v. Johnson*,
   932 F.3d 965 (6th Cir. 2019) ........................................................ 16, 22

*United States v. McCrary*,
   220 F.3d 868 (8th Cir. 2000) ..............................................................16

*United States v. Montgomery*,
   578 F. Supp. 3d 54 (D.D.C. 2021)......................................................27

*United States v. Nelson*,
   465 F.3d 1145 (10th Cir. 2006) ..........................................................20

*Vandagriff v. Fed. Bureau of Prisons*,
   No. 10-225-ART, 2010 WL 4867640 (E.D. Ky. Nov. 23, 2010) .......35

*Warth v. Seldin*,
   422 U.S. 490 (1975) ............................................................................16

*Whitman v. Am. Trucking Assns.*,
   *Inc.*, 531 U.S. 457 (2001) ...................................................................26

*Williams v. Lakeview Loan Servicing LLC*,
   509 F. Supp. 3d 676 (S.D. Tex. 2020)................................................34

*Yellowbear v. Wyo. Att'y Gen.*,
   525 F.3d 921 (10th Cir. 2008) ...................................................... 19, 20

*Zavala v. Ridge*,
   310 F. Supp. 2d 1071 (N.D. Cal. 2004)..............................................35

## STATE CASES

*Hanson v. State*,
   72 P.3d 40 (Okla. Crim. App. 2003) ................................................5, 11

*Hanson v. State*,
   206 P.3d 1020 (Okla. Crim. App. 2009) ...............................................5

## **FEDERAL STATUTES**

**5 U.S.C. § 706**..................................................................................**31, 32**

**18 U.S.C. § 3623**...................................................**2-4, 6, 8, 11, 14, 15, 21-34, 36**

**18 U.S.C. § 3625**.......................................................................................**32**

**28 U.S.C. § 1291**.........................................................................................**4**

**28 U.S.C. § 2201**.......................................................................................**3, 4**

**28 U.S.C. § 2241**..............................................**3, 4, 7, 13, 17, 18, 19, 20**

**28 U.S.C. § 2244**.......................................................................**17, 20, 21**

**28 U.S.C. § 2253**...........................................................**4, 11, 13, 14, 15**

**28 U.S.C. § 2254**.............................................................**5, 9, 16, 19, 20**

**28 U.S.C. § 2255**......................................................................................**15**

## **FEDERAL RULES**

**Fed. R. App. P. 4**......................................................................................**3**

UNITED STATES COURT OF APPEALS FOR THE
TENTH CIRCUIT

| | |
|---|---|
| JOHN FITZGERALD HANSON,<br><br>*Petitioner/Appellant*,<br><br>v.<br><br>CHRISTE QUICK, Warden, et al.,<br><br><br><br><br><br><br><br>*Respondents/Appellees*. | Case No. 25-7044<br><br>CAPITAL CASE<br><br>EXECUTION JUNE 12, 2025<br>AT 10:00 AM CDT |

## RESPONDENTS/APPELLEES CHRISTE QUICK AND STEVEN HARPE'S[1] COMBINED RESPONSE TO PETITIONER'S MOTION FOR A CERTIFICATE OF APPEALABILITY ON COUNT ONE AND RESPONSE TO PETITIONER'S OPENING BRIEF ON COUNTS TWO AND FOUR

An Oklahoma jury convicted Petitioner for the brutal 1999 murders of Mary Bowles and Jerald Thurman. A jury sentenced Petitioner to death for slaying Ms. Bowles. Petitioner has exhausted all available challenges to his convictions and sentences. On May 7, 2025, the Oklahoma Pardon and Parole Board denied Petitioner's request for executive clemency. He is in Oklahoma's custody, and justice for Ms. Bowles (and Mr. Thurman) has finally arrived. Petitioner is scheduled to be lawfully executed on June 12, 2025, at 10:00 a.m. CDT.

---

[1] The undersigned counsel represent Warden Quick and Director Harpe (hereinafter "Oklahoma Respondents") and present this response on their behalf.

Petitioner was also convicted of numerous federal felonies, for which he was previously serving life imprisonment in a federal prison in Louisiana. Upon request by Oklahoma Attorney General Gentner Drummond, the United States exercised its discretion to transfer Petitioner to Oklahoma for his scheduled execution. After his transfer, Petitioner filed in the U.S. District Court for the Eastern District of Oklahoma a combined complaint/petition for writ of habeas corpus attempting to challenge his transfer. Petitioner raised four claims: (1) he is entitled to a writ of habeas corpus because his transfer violated 18 U.S.C. § 3623; (2) his transfer was *ultra vires* in violation of § 3623; (3) he is entitled to a declaration that his transfer violated § 3623; and (4) his transfer violated due process because Oklahoma waived jurisdiction. ROA 6-27.[2] The claims are all utterly meritless.

At the core of Petitioner's claims is the argument that the federal government is prohibited from *ever* transferring him to Oklahoma for execution of Oklahoma's

---

[2] Petitioner's claims, as presented to this Court, are confusing at best when viewed as a whole. He essentially argues that he can never be executed, but he does not allege his conviction or sentence is infirm. He argues Oklahoma waived its right to execute him by not requesting a transfer sooner, but he also argues that he can never be transferred. In addition, he has abandoned arguments made below (such as his challenge to the BOP's "public interest" determination) and added new ones (such as his argument that the district court improperly deferred to the Federal Bureau of Prison's written guidance).

Oklahoma Respondents will respond to what they understand Petitioner to be claiming now, without waiving or abandoning arguments made below to the extent this Court may disagree with Respondents' understanding of Petitioner's appeal.

lawful death sentence because he will never be subject to release from his federal life sentence and § 3623 permits transfer only "prior to his release." Petitioner's indirect attack on his valid death sentence is based on a contorted and frivolous reading of § 3623 and would lead to absurd results. Where both sovereigns in our esteemed federalist system have agreed to transfer a prisoner to face punishment for an infamous and brutal murder is where governmental power and discretion is at its greatest and the prisoner's alleged "rights" the weakest.  This Court should affirm the district court's denial of relief on all grounds.

## STATEMENT OF JURISDICTION

On March 14, 2025, Petitioner filed a combined petition for writ of habeas corpus (28 U.S.C. § 2241) and complaint for declaratory and injunctive relief (28 U.S.C. § 2201) in the U.S. District Court for the Eastern District of Oklahoma. ROA 6-27. He also asked for a stay of execution. ROA 567-78. The court denied the requested relief on May 27, 2025. ROA 637-46. Petitioner filed a notice of appeal pursuant to Fed. R. App. P. 4(a)(1)(B) on May 28, 2025. ROA 647. This Court ordered Petitioner to file any relevant motions or briefs by Monday, June 2, 2025, at 12:00 p.m. MDT, with Respondents to file any relevant responses by Wednesday, June 4, 2025, at 3:00 p.m. MDT. (Doc. 8; *Order* via text entry dated 5/30/2025).

This Court has jurisdiction over Petitioner's purported § 2241 claims under 28 U.S.C. §§ 1291 and 2253. This Court has jurisdiction over Petitioner's purported § 2201 claims under 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1.    Whether reasonable jurists would overlook the procedural shortcomings in Petitioner's habeas claim, conclude that he has standing and a liberty interest in the order in which he serves his sentences, and debate the district court's conclusion that the United States did not violate 18 U.S.C. § 3623.

2.    Whether the Federal Bureau of Prisons ("BOP") had the authority to transfer Petitioner for execution of Oklahoma's lawful death sentence.

3.    Whether Oklahoma somehow waived jurisdiction over Petitioner by honoring his request that he be returned to federal custody while he challenged his state convictions and sentences, while vigorously and successfully defending the convictions and sentences against his every attack for decades.

## STATEMENT OF THE CASE

Prior to his murder convictions in Oklahoma state court, Petitioner was convicted in federal court of numerous charges, receiving sentences of life plus 984 months imprisonment in Northern District of Oklahoma Case No. 99-CR-125-002-C. The United States then transferred Petitioner to Oklahoma, where he was convicted of the murders before being returned to federal prison. ROA 13. The

4

Oklahoma Court of Criminal Appeals ("OCCA") affirmed his murder convictions, and his life without parole sentence for Jerald Thurman's murder. With respect to his death sentence for the murder of Ms. Bowles, the OCCA found the existence of numerous errors which warranted a capital resentencing trial. *Hanson v. State*, 72 P.3d 40, 55 (Okla. Crim. App. 2003). The United States again transferred Petitioner to Oklahoma for resentencing. ROA 13. After his resentencing jury sentenced him to death in January 2006, Petitioner was returned to federal prison at his request and in compliance with Oklahoma law. ROA 230. The OCCA affirmed his death sentence on April 13, 2009. *Hanson v. State*, 206 P.3d 1020, 1033-36 (Okla. Crim. App. 2009). Petitioner petitioned the Supreme Court for a writ of certiorari, which it denied on December 7, 2009. *Hanson v. Oklahoma*, 558 U.S. 1081 (2009).

In 2010, Petitioner sought federal habeas corpus relief, filing a 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus in the U.S. District Court for the Northern District of Oklahoma, which the district court ultimately denied. *Hanson v. Sherrod*, No. 10-CV-0113-CVE-TLW, 2013 WL 3307111 (N.D. Okla. July 1, 2013) (unpublished). Accordingly, in 2014, Petitioner brought his case to this Court, which considered and rejected the issues he raised on August 13, 2015. *Hanson v. Sherrod*, 797 F.3d 810, 824-53 (10th Cir. 2015). Shortly after, he petitioned the Supreme Court for a writ of certiorari that was denied. *Hanson v. Sherrod*, 578 U.S. 979 (2016).

As of May 16, 2016, therefore, no legal impediment to Petitioner's execution remained. But on June 1, 2016, the OCCA declined to set a date for Petitioner's execution in light of a then-ongoing investigation into Oklahoma's lethal injection protocol. Once the Western District of Oklahoma affirmed the constitutionality of the State's protocol, *Glossip v. Chandler*, No. CIV-2014-665-F, 2022 WL 1997194 (W.D. Okla. June 6, 2022) (unpublished), the OCCA issued an Order setting Petitioner's execution date for December 15, 2022. In preparation for that execution, the State unsuccessfully sought to have Petitioner transferred from federal custody back to Oklahoma. *Oklahoma v. Tellez*, No. 7:22-CV-108-O, 2022 WL 17686579, at *2 (N.D. Tex. Dec. 13, 2022) (unpublished). In short, the United States (at the time) claimed justice for Mary Bowles was not in the public interest and the federal district court found that it lacked the authority to review a decision under § 3623.

On January 23, 2025, the State again requested that Petitioner be transferred back to Oklahoma for execution of his state death sentence. ROA 28-29. Less than a week later, Petitioner sued and moved for emergency injunctive relief in the U.S. District Court for the Western District of Louisiana. *Hanson v. Drummond*, No. 25-CV-102, 2025 WL 636319, at *2 (W.D. La. 2025) (unpublished). The magistrate judge recommended a temporary injunction preventing Petitioner's transfer to Oklahoma. *Hanson v. Drummond*, No. 25-CV-102, 2025 WL 819656, at *3 (W.D. La. 2025). While the suit was pending before the district court, U.S. Attorney

General Pam Bondi issued a "Memorandum for the Acting Director of the Federal Bureau of Prisons," ordering that Petitioner be transferred back to Oklahoma. ROA 45-46. In that memo, General Bondi explained that his transfer was "in the public interest" because he "viciously murdered an innocent woman," while also noting that enforcement of Petitioner's Oklahoma death sentence would "achieve justice and provide a measure of closure to the victim's family and her community for the horrific crime committed by . . . [Petitioner]." ROA 45-46.

On February 27, 2025, the district court rejected the magistrate judge's report and recommendation and dismissed Petitioner's lawsuit. *Hanson*, 2025 WL 6363119, at *3. In so holding, the court explained that the matter was not ripe because the Federal Bureau of Prisons had not yet decided whether to transfer Petitioner. *Id*. Further, the court stated that even if the claim was justiciable, "it is **doubtful** that the court would grant the requested relief." *Id.* (emphasis added). Petitioner was transferred to Oklahoma the following day, given the lack of any legal impediment, and he has been incarcerated at Oklahoma State Penitentiary since that time. ROA 50.

Shortly after being transferred back to Oklahoma, Petitioner filed a "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Complaint for Declaratory and Injunctive relief" challenging his transfer. ROA 11-26. In this petition, Petitioner argued in Count One that he was entitled to a writ of habeas

corpus because the BOP violated § 3623 by "(1) considering factors other than the public interest when granting transfer,"[3] and "(2) transferring [Petitioner] before the end of his federal sentence." ROA 20. In Count Two, he argued that the BOP committed an *ultra vires* violation of § 3623 by transferring him "without notice and opportunity . . . to re-urge his complaint or otherwise be heard[.]" ROA 22. Petitioner sought declaratory relief in Count Three, alleging his transfer was "in violation of the law." ROA 23. Finally, Petitioner argued in Count Four that Oklahoma had waived jurisdiction over him "due to a lack of pursuit and inaction" between 2006 and 2022. ROA 23-24.

The State filed a response to the petition on April 4, 2025. ROA 174-224. There, the State argued that the petition should be dismissed because it was untimely, Petitioner lacked standing to challenge his transfer, and the petition was an improper second and successive habeas petition. ROA 190-97. Further, the State argued that Petitioner does not have a liberty interest in serving his federal life sentence, and that his transfer was proper under § 3623. ROA 198-219. Moreover, the State argued that it did not waive jurisdiction over Petitioner. ROA 220-23. While this was pending, Petitioner was denied clemency at the conclusion of his May 7 clemency hearing.

The magistrate judge issued his Findings and Recommendations, which recommended that the petition be denied. ROA 579-610. The magistrate judge also

---

[3] Petitioner has abandoned this allegation, which was never supported.

recommended that Petitioner's Motion for Stay of Execution be denied. ROA 609.

Petitioner filed an objection to the magistrate's recommendations on May 22. ROA

620-30. The district court adopted the magistrate's recommendations on May 27,

denying all requested relief. ROA 637-45.

Now Petitioner has filed with this Court a combined motion for a Certificate

of Appealability ("COA")/opening brief and motion to stay his June 12 execution.

(Docs. 29-1, 30). This Court's May 30 Order (Doc. 8) directs Respondents to file

"any response brief(s)" by 3:00 p.m. MDT on Wednesday, June 4, 2025.

## STATEMENT OF THE FACTS

The OCCA set forth the relevant facts in its published opinion on direct

appeal. Such facts are to be presumed correct under the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2254(e)(1). According to the

OCCA:

> [Petitioner Hanson] and Victor Miller took Mary Agnes
> Bowles from the Promenade Mall in Tulsa sometime
> between 4:15 p.m. and 5:50 p.m. on August 31, 1999.
> They had already robbed two liquor stores, and wanted to
> use Bowles's car in another robbery. Hanson held Bowles
> down in the back seat while Miller drove to an isolated
> area near Owasso. He turned down a road leading to a dirt
> pit. The pit's owner, Mr. Thurman, was there loading a
> dump truck for a delivery. While speaking to his nephew,
> Jim Moseby, on his cell phone, Thurman said he saw a car
> circling through the pit. After this conversation, Miller
> shot Thurman four times with a chrome .380 revolver.
> Miller drove a short distance away. He stopped at an

overgrown roadside. Hanson got out with Bowles and, using a 9mm semiautomatic pistol, shot her between four and six times as she lay on the ground. Before leaving the scene, they partially covered her with branches. Neighbors heard several shots coming from the pit area and saw an unfamiliar car drive by. They found Thurman lying near his dump truck at the entrance to the road. Thurman was taken to the hospital; he never regained consciousness and died on September 14. Bowles's decomposed body was found on September 7.

Hanson and Miller drove Bowles's car to the Oasis Motel. Hanson asked the price of a room, then left. He returned shortly, explained that his car wouldn't start, and asked to borrow tools. The desk clerk gave him a screwdriver and followed him out. The clerk saw Hanson and another black man working on Bowles's car. Eventually the two gave up and returned the screwdriver and Hanson rented a room. He filled out and signed the registration card, and showed the clerk his driver's license. The clerk never saw either man again, and the car remained parked in the motel lot. Hanson and Miller robbed a liquor store on September 3, and robbed a federal credit union on September 8. On September 9 Miller's wife made an anonymous phone call telling police that Hanson and Miller, the credit union robbers, were in the Muskogee Econolodge. Also on September 9, a patrol officer saw Bowles's car parked at the Oasis. The officer discovered Hanson had rented a room and left the car there. Law enforcement officials from various jurisdictions coordinated this information and served warrants on Miller and Hanson at the Econolodge. Miller came out immediately. Hanson stayed in the room until driven out by tear gas. While he was alone in the room Hanson hid the murder weapons and extra ammunition in the toilet tank. Hanson's fingerprint was found on the driver's seat belt latch in Bowles's car, and Miller's fingerprint was on the front passenger seat belt latch. Rashad Barnes testified that, a few days before his arrest, Hanson visited him. Hanson said they carjacked

an old lady, described how Miller killed Thurman, and
confessed to Bowles's murder.

*Hanson v. State*, 72 P.3d 40, 45-46 (Okla. Crim. App. 2003) (para. numbers omitted).

## SUMMARY OF ARGUMENT

Federal law requires the BOP to transfer a federal inmate to state custody for
trial or to serve a state sentence when three numbered criteria are met: (1) the state's
executive authority requests transfer; (2) the state presents "a certified copy of the
indictment, information, or judgment of conviction"; and (3) the BOP Director (or
his or her designee) "finds that the transfer would be in the public interest." 18 U.S.C.
§ 3623. Petitioner does not dispute that each of the above requirements were satisfied
before his transfer. (Doc. 29-1 at 44).

Rather, Petitioner's Counts One and Two below—corresponding to Part One
"COA Ground I" and Part Two (Count Two) of his opening brief—seek to add an
additional requirement to the statute, one which Petitioner claims has not been
satisfied. Petitioner argues he can never be transferred from federal custody to
Oklahoma because he can never be released from his federal life sentence. (Doc. 29-
1 at 22-31, 38-53). This non-constitutional claim cannot be the subject of a COA. 28
U.S.C. § 2253(c)(2) (limiting COAs to alleged violations of constitutional rights).

In addition, Petitioner does not have a liberty interest in the order in which he
serves his sentences. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). Further,
Petitioner's statutory argument is wildly incorrect. Section 3623 begins: "The

Director of the Bureau of Prisons shall order that a prisoner who has been" charged with or convicted of a State felony "be transferred to an official detention facility within such State *prior to his release from a Federal prison facility*" if the aforementioned three requirements are satisfied. 18 U.S.C. § 3623 (emphasis added).

According to Petitioner, "prior to his release" means *shortly* before his release and, because he will never (likely) be released, he can never be transferred. (Doc. 29-1 at 30). Petitioner's contorted reading of the statute will lead to absurd results— such as insulating federal prisoners serving any sentence that extends beyond their anticipated lifespan from lawful state-imposed death sentences. The statute is more naturally understood to require the BOP to transfer an inmate when, during his sentence, the statutory requisites are satisfied. Petitioner's Part One ("COA Ground I") does not warrant a COA and the district court should be affirmed as to Part Two (Count Two).

Petitioner has added a claim to his request for habeas relief that was not raised below. In his Part One "COA Ground II", Petitioner argues the district court's decision is inconsistent with *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). (Doc. 29-1 at 31-35). Petitioner did not cite *Loper Bright* in his habeas petition or make an argument similar to the one he raises now until his objection to the magistrate's report and recommendation. ROA 626-28. Petitioner has waived Part One "COA Ground II." *See United States v. Garfinkle*, 261 F.3d 1030, 1031

(10th Cir. 2001) ("[T]heories raised for the first time in objections to the magistrate judge's report are deemed waived."). Further, Petitioner's arguments reflect a fundamental misunderstanding of *Loper Bright* and the district court's decision. He is not entitled to a COA on Part One "COA Ground II".

Petitioner's Count Four below—corresponding to Part Two (Count Four) of his opening brief—argues the State waived jurisdiction over him by honoring his wishes and the United States' detainer, returning him to the BOP, and seeking his return as soon as he was eligible for execution. (Doc. 29-1 at 54-56). The State unceasingly defended Petitioner's convictions and sentences and requested his transfer when his challenges were finally denied. Petitioner's argument here is entirely unsupported by law or fact. This Court should affirm the district court's denial of relief as to Part Two (Count Four).[4]

## STANDARD OF REVIEW

Petitioner's Part One "COA Ground I" sounds in habeas and therefore requires a COA. 28 U.S.C. § 2253(c); *see Montez v. McKinna*, 208 F.3d 862, 867 (10th Cir. 2000) (holding the COA requirement applies to § 2241 petitions challenging state custody).[5] Thus, Petitioner must "ma[k]e a substantial showing of

---

[4] Count Three below sought declaratory relief. Petitioner has abandoned that claim. (Doc. 29-1).

[5] In fact, as will be explained, all of Petitioner's claims truly sound in habeas.

the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is satisfied if "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Petitioner's Part One "COA Ground II" *ultra vires* claim presents a question of law that this Court reviews *de novo*. *Toomer v. City Cab*, 443 F.3d 1191, 1194 (10th Cir. 2006).

Petitioner's Part Two (Count Four) is subject to a mixed standard of review. The district court's legal conclusions are reviewed *de novo*, while its factual findings may be disturbed only if they are clearly erroneous. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1186-87 (10th Cir. 2002).

## ARGUMENT AND AUTHORITY

### PART ONE ("COA GROUND I")

**PETITIONER HAS FAILED TO IDENTIFY A CONSTITUTIONAL RIGHT AT ISSUE, MUCH LESS MAKE A SUBSTANTIAL SHOWING THAT SUCH A RIGHT WAS DENIED.**

Petitioner asks this Court to review the district court's denial of his request for a writ of habeas corpus based on his argument that 18 U.S.C. § 3623 prohibits the Federal Government from ever transferring him to Oklahoma for execution. This

claim presents a question of statutory interpretation for which a COA is not permitted. It is also meritless. This Court must deny Petitioner's request for a COA.

### A. Petitioner cannot Obtain a COA for an Alleged Statutory Violation.

Petitioner seeks a writ of habeas corpus based on his claim that "the district court erred in holding that the government has met all the transfer requirements of 18 U.S.C. § 3623." (Doc. 29-1 at 12) (bold and capitalization removed). But a COA may be issued only if a _constitutional_ right is at stake. 28 U.S.C. § 2253(c)(3); *United States v. Cepero*, 224 F.3d 256, 265-67 (3d Cir. 2000), *abrogated on other grounds by Gonzalez v. Thaler*, 565 U.S. 134, 140-48 (2012) (holding the COA requirement is not jurisdictional).

Petitioner's Part One "COA Ground I" relies entirely on his (misguided) interpretation of § 3623. (Doc. 29-1 at 22-31). Petitioner does not invoke the Constitution. Accordingly, he may not receive a COA. *See, e.g.*, *United States v. Gordon*, 172 F.3d 753, 754 (10th Cir. 1999) ("[W]hile nonconstitutional sentencing issues are proper bases for a defendant to proceed in the district court [under 28 U.S.C. § 2255], these claims would not support issuance of a certificate of appealability because they do not assert the denial of a constitutional right.") (quotation marks omitted, alterations adopted).

In light of the last-minute nature of this litigation, however, Respondents will also demonstrate that Petitioner's claim lacks merit.

### B. Petitioner's Claim Fails Because of Standing, Timeliness, Exhaustion, 28 U.S.C. § 2254, the Second or Successive Petition Rule, Etc.

Here, Oklahoma Respondents preserve arguments that were rejected, or not passed upon, below. Specifically, Petitioner lacks standing to bring suit. Further, his habeas claim is untimely, unexhausted, and should arguably be brought under 28 U.S.C. § 2254. Finally, the State of Oklahoma did not effectuate Petitioner's transfer and lacks authority to enforce a federal statute. Thus, the Oklahoma Respondents are not proper respondents. This Court must address standing but may choose to overlook the remaining issues to deny relief for Petitioner's meritless claim.

### *1. Standing*

Standing is a preliminary matter that must be addressed. *See United States v. Johnson*, 932 F.3d 965, 966 (6th Cir. 2019) (*per curiam*) ("As an initial matter, we must first ensure that [an inmate] has Article III standing to object[.]"). The magistrate judge rejected the Oklahoma Respondents' standing argument. ROA 588-90. Nonetheless, Petitioner does not assert his *own* rights or allege an injury in fact. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (for standing "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"); *United States v. McCrary*, 220 F.3d 868, 870 (8th Cir. 2000) ("The exercise of jurisdiction over [the defendant] is solely a question to be determined between those two sovereignties, and is not subject to attack by the prisoner."); *but see Moody v. Holman*, 887 F.3d 1281, 1285

(11th Cir. 2018) (holding that inmate had standing to challenge transfer from federal to state custody for execution, but upholding the transfer as lawful).

To have standing, a plaintiff "must have suffered an injury in fact." *United States v. Hays*, 515 U.S. 737, 742-43 (1995). An injury in fact is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 743. There must also be a "causal connection between the injury and the conduct complained of." *Id*. In addition, it must be likely that the injury can be "redressed by a favorable decision." *Id*. Petitioner's alleged injury here is his execution. But it is hard to see how the execution of an indisputably lawful sentence can constitute an actionable *injury* in fact. Petitioner therefore lacks standing.

### 2. Timeliness

A one-year statute of limitations, found at 28 U.S.C. § 2244(d)(1), applies to § 2241 petitions. *See Burger v. Scott*, 317 F.3d 1133, 1138 (10th Cir. 2003). The limitation period typically begins at the conclusion of direct review of the relevant conviction and sentence. 28 U.S.C. § 2244(d)(1)(A). However, there are other triggering events: the removal of a state-imposed impediment; a retroactive newly recognized constitutional right; or the date on which a factual predicate became discoverable through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(B)-(D).

For Petitioner, none of the four triggers occurred in the past year. Indeed, the only one even remotely arguable is subsection (D). But even there, the factual

predicate of Petitioner's current habeas claims—that Oklahoma would seek his transfer for execution—was known much earlier than one year ago. Although Petitioner attempts to cast his petition as a challenge to the recent decision to transfer him to Oklahoma, it has been known since at least 2022—and in reality, far earlier— that Oklahoma intended to obtain custody of Petitioner for execution via transfer from the federal government.

Petitioner waited until his current Petition—26 years after his crime and 19 years after his death sentence—to argue that his transfer would violate federal law. This is the definition of dilatory, and it does not comply with AEDPA. *See, e.g.*, *Hereford v. McCaughtry*, 101 F. Supp. 2d 742, 745-46 (E.D. Wis. 2000) (rejecting inmate's claim that factual predicate was not available until the return of his case file as a "red herring," and concluding that claim was untimely); *Chesteen v. Thaler*, No. 1:10CV106, 2010 WL 5830497, at *3 (E.D. Tex. Sept. 28, 2010) (unpublished) (deeming petitioner's argument that the factual predicate for his claims was unavailable until May 2009 as "illusory and ... without merit"). The Petition is untimely. Petitioner should have brought his newfound transfer argument years ago.

### 3. Exhaustion

An inmate seeking a writ of habeas corpus under 28 U.S.C. § 2241 must exhaust his remedies in state court. *Montez*, 208 F.3d at 866. Nevertheless, in light of the confused nature of Petitioner's claim—in particular his filing of a habeas

petition seeking to enjoin an indisputably lawful state execution based on the Federal Government's decision to transfer custody—this Court may choose to deny the claim on the merits without addressing exhaustion. *Id*. In any event, this Court cannot grant relief without addressing the question of exhaustion. *See* 28 U.S.C. § 2254(b)(3) (a state must expressly waive the exhaustion requirement).

### 4. 28 U.S.C. § 2254

Petitioner is not *directly* challenging the validity of his conviction and sentence. As a result, this Court could review his habeas effort under 28 U.S.C. § 2241. *See Montez*, 208 F.3d at 865. However, Petitioner's habeas claim is arguably a *de facto* challenge to his Oklahoma death sentence as he seeks a return to federal prison with no possibility of a future transfer. ROA 11 (asking the court to "prevent Defendants from ending his federal sentence of life imprisonment and putting him to death"). In that sense, Petitioner attacks the validity of his execution and should proceed under 28 U.S.C. § 2254. *See, e.g.*, *Fletcher v. Lengerich*, No. 23-1395, 2024 WL 1155260, at *2 (10th Cir. Mar. 18, 2024) (unpublished) (claim that arrest was made without jurisdiction sounded in § 2254); *Lynch v. Standifird*, 441 F. App'x 623, 624 (10th Cir. Nov. 29, 2011) (unpublished) ("Because Mr. Lynch attacked the validity of his habitual-offender sentence, rather than the manner in which the sentence is being executed, the district court correctly considered the application to be under § 2254 …."); *Yellowbear v. Wyo. Att'y Gen.*, 525 F.3d 921, 924 (10th Cir.

19

2008) (challenge to state court's jurisdiction "is an attack on his conviction and sentence" that must be brought under § 2254); *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (noting that petitions under § 2254 "collaterally attack the validity of a conviction and sentence."); *cf. United States v. Nelson*, 465 F.3d 1145, 1149 (10th Cir. 2006) (nature of a pleading is determined by the relief sought, not the title). Nevertheless, out of an abundance of caution and consistent with how several federal courts have treated a wrongful transfer claim, *e.g.*, *Moody*, 887 F.3d at 1284-92, Oklahoma Respondents respond to this claim under § 2241.

### 5. Petitioner's Claim is Barred by 28 U.S.C. § 2244(b)(2)

Petitioner is attacking the validity of his death sentence by attempting to prevent Oklahoma from ever executing him. Petitioner's attempt to dodge his Oklahoma death sentence altogether sounds in habeas under 28 U.S.C. § 2254—not 28 U.S.C. § 2241. *See Yellowbear*, 525 F.3d at 924; *McIntosh*, 115 F.3d at 811; *cf. Nelson*, 465 F.3d at 1149 (nature of a pleading is determined by the relief sought, not the title). Because Petitioner's claim is a § 2254 claim, it is a successive petition. This is the second time that Petitioner has filed a § 2254 habeas petition attacking his convictions. *See Hanson*, 2013 WL 3307111. Thus, Part One (Count Four) must be authorized by this Court. 28 U.S.C. § 2244(b)(3)(A).

A second or successive petition may be filed only if the claim relies on a retroactive new rule of constitutional law or the claim relies on a newly discoverable

factual predicate *and* "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2). Petitioner does not rely on a new constitutional right or newly discoverable facts, and his claim has nothing to do with his guilt. Petitioner's claim must be dismissed.

### 6. *Oklahoma Respondents are not Proper Respondents*

Petitioner's claim involves an alleged violation of federal statute. He has not alleged that Oklahoma Respondents have violated 18 U.S.C. § 3623 in any specific way, nor would any such allegation be plausible. Although § 3623 references the responsibility of a "State" multiple times, those requirements are not ones that Petitioner focuses on. Here, Oklahoma has indisputably "requested" the transfer, "presented to the Director a certified copy of the … judgment of conviction," and "borne" the "expenses of such transfer." 18 U.S.C. § 3623. Oklahoma Respondents have not violated § 3623. Petitioner is in Oklahoma's possession for the carrying out of a just sentence imposed by an Oklahoma jury. Accordingly, the State cannot be forced to return Petitioner, regardless of whether the United States complied with § 3623. Oklahoma Respondents should be dismissed from the case, and without them, there is no possible remedy for Petitioner.

### C. Petitioner's Statutory Argument is Meritless.

Petitioner argues that, in the context of surrounding statutes, the phrase "prior to his release" in § 3623, forever precludes his transfer because he is serving a federal life sentence. (Doc. 29-1 at 23-31). Reasonable jurists could not debate the district court's rejection of Petitioner's unnatural reading of the statute, which elevates "prior to his release" above the rest of the text, including the numbered requirements.

As a preliminary matter, the magistrate judge recommended denial of Petitioner's habeas claim, recognizing he "seeks not liberty from unlawful restraint, but a preferred jurisdiction for that restraint. That is not a claim the Writ of Habeas Corpus was designed to entertain." ROA 590-91. The district court correctly adopted this finding. ROA 641-42, 644.

Petitioner has abandoned any due process argument. *See* (Doc. 29-1 at 23-31). Nonetheless, the district court correctly determined, based on copious authority, that Petitioner has no liberty interest in his location of confinement or the order in which his federal and state sentences are served. *See Moody*, 429 U.S. at 88 n.9; *Kelley v. Oregon*, 273 U.S. 589 (1927); *Morse v. United States*, 267 U.S. 80 (1925); *Ponzi v. Fessenden*, 258 U.S. 254 (1922); *Johnson*, 932 F.3d at 968; *Moody*, 887 F.3d at 1285-87; *Causey v. Civiletti*, 621 F.2d 691, 694 (5th Cir. 1980); *U.S. ex rel. Buchalter v. Warden of Sing Sing Prison*, 141 F.2d 259, 259-60 (2d Cir. 1944); *Boyce v. United States*, 52 F. Supp. 115, 116 (M.D. Pa. 1943); *Armstrong v. Salinas*,

No. 6:13-179-KKC, 2014 WL 340399, at *8 (E.D. Ky. Jan. 30, 2014) (unpublished).

Thus, Petitioner's claim presents only a matter of statutory construction.

His statutory argument is meritless. The magistrate judge found that the United States complied with § 3623 because "the phrase 'prior to his release' plainly ensures that transfers under § 3623 occur before a prisoner exits federal custody altogether, not that they must wait until the last days or weeks of a sentence." ROA 591-93, 596-97. The district court agreed. ROA 641-42, 644.

Petitioner relies heavily on what he claims was a different interpretation made by a different district court. (Doc. 29-1 at 23, 29, 44 (citing *Oklahoma v. Tellez*, No. 7:22-cv-00108-O, 2022 WL 17686579, *3 (N.D. Tex. Dec. 13, 2022) (unpublished)). In litigation over Oklahoma's 2022 transfer request, the district court held that it lacked jurisdiction to review Oklahoma's *ultra vires* challenge to the BOP's "public interest" determination. *Tellez*, 2022 WL 17686579, *3. Petitioner relies on the following language: "Taken together, Plaintiffs interpretive arguments essentially urge the Court to read the provision as follows: The Director of BOP **shall** order that a prisoner be transferred [to state custody] ~~**prior to his release**~~ ... if ~~**the Director finds that**~~ the transfer is in the public interest." ROA 557 (citing *Tellez*, 2022 WL 17686579, *3) (emphasis and alterations adopted). The court did not explain why it struck "prior to his release" in this formulation, nor did it rely on that excision in denying relief. *Id*. Rather, *as Petitioner concedes*, "the issue here of 'prior

23

to his release' was not present in *Tellez*." (Doc. 29-1 at 50). *Tellez* is irrelevant on this question.

Petitioner's argument is not supported by the text or context of § 3623. "[S]tatutory interpretation begins with the language of the statute itself." *In re Lehman*, 205 F.3d 1255, 1255-56 (11th Cir. 2000). This Court may look beyond the text only if the statute is ambiguous. *In re Taylor*, 899 F.3d 1126, 1131 n.2 (10th Cir. 2018). Section 3623 is not ambiguous. As described below, it explicitly spells out three—and only three—numbered requirements for transfer. The phrase upon which Petitioner relies—"prior to his release"—is commonsense prefatory language that means what it says and no more.

This Court must "follow the cardinal rule that statutory language must be read in context [since] a phrase gathers meaning from the words around it." *Knapp v. U.S. Dep't. of Agric.*, 796 F.3d 445, (5th Cir. 2015) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). This Court will also seek to avoid absurd results. *Taylor*, 899 F.3d at 1131 n.2. Here, Petitioner's arguments ignore the context *and* produce absurdity.

Textually, Petitioner *was* transferred "prior to his release." There is no other possibility, as he was not transferred at or during his release, and he could not logically be transferred after a release. *See Prior*, Merriam-Webster Online (defining "prior" as "earlier in time or order");[6] *see also, e.g.*, *Prior*, Webster's Ninth New

---

[6] https://www.merriam-webster.com/dictionary/prior (last visited, June 4, 2025).

Collegiate Dictionary (9th ed. 1983). Petitioner argues he will never be released from federal prison, ergo he cannot be transferred. But this ignores that *every* relevant release is hypothetical. That is the intrinsic nature of the phrase "prior to"—it means a release is being discussed that has not happened yet and therefore may not happen for any number of reasons. For example, a prisoner could commit another crime before release, he could die before release, etc. In addition, once the transfer occurs that is contemplated by § 3623, the relevant release *will never happen*. The whole point of the § 3623 enterprise is to transfer an inmate *instead of* "release" him. And even Petitioner implicitly admits that his own federal release was hypothetically possible; he just claims it was not "foreseeable." ROA 20. Petitioner, for example, could have received a pardon or commutation in the future. For all these reasons, Petitioner's transfer plainly occurred "prior to his release."

Contextually, the entirety of § 3623 indicates that the phrase "prior to his release" refers to when the statutory criteria apply and is not a loophole around them. Section 3623 has two parts that are relevant here: a prefatory phrase, and a list of numbered criteria. The prefatory phrase commands that federal government "*shall*" transfer an inmate "prior to his release" "if" certain conditions are met. The list of numbered criteria provides the primary conditions on which the "shall" command applies, with references to "*the* transfer" that indicate the criteria used to assess a particular request.

Put differently, as should be clear from a simple read-through of the statute, the term "prior to his release" in § 3623 is a commonsense description of when the statute applies that encourages the federal government to act promptly, not a tool to frustrate transfers otherwise commanded or approved by the statute. Had Congress wanted to place the weight on that phrase that Petitioner demands—weight that would allow a court to override both the United States and Oklahoma's positions—Congress would have included it as a numbered criteria and spelled out that "prior to release" means that no prisoner under a life sentence can ever be transferred.

Congress, though, "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." *Gonzales v. Oregon*, 546 U.S. 243, 267 (2006) (quoting *Whitman v. Am. Trucking Assns., Inc.*, 531 U.S. 457, 468 (2001)). But that is exactly what Petitioner's position entails. According to him, tucked away in the passing phrase "prior to his release," in a statute entitled "Transfer of a prisoner to State authority" that makes transfers mandatory ("shall"), Congress banned the federal government from ever transferring a prisoner serving a life sentence for a federal crime, even when a state death sentence would be nullified as a result. This cannot be the correct reading of § 3623. Among other things, this reading would reward Petitioner for committing additional crimes that could be charged by the federal authorities. Under his logic, that is, the other murderous inmates on Oklahoma's

death row should also have committed armed bank robberies in order to avoid Oklahoma's death penalty. This would be an absurd result.

Petitioner further argues that Oklahoma's interpretation of § 3623 renders the phrase "prior to his release" superfluous, violating "one of the most basic interpretive canons[.]" (Doc. 29-1 at 24 (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)). This is not so, as the above discussion shows. *See* ROA at 596-97 (magistrate judge's recommendation rejecting Petitioner's reading as a "strained [one] that ignore[s] context or purpose."). But even ignoring this, "[t]he canon against surplusage is not an absolute rule," *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013), but "merely an interpretive aid," *Jordan v. Maxim Healthcare Servs., Inc.*, 950 F.3d 724, 743 (10th Cir. 2020) (citation omitted); *see also Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 299 n.1 (2006) ("While it is generally presumed that statutes do not contain surplusage, instances of surplusage are not unknown"); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) (similar).

Indeed, this Court has recognized that "[s]ometimes drafters … do include words that add nothing of substance." *Jordan*, 950 F.3d at 743 (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 176 (2012)). Important here, the surplusage canon "cannot trump the plain meaning of the statute." *United States v. Montgomery*, 578 F. Supp. 3d 54, 74 (D.D.C. 2021).

27

And the plain meaning of § 3623 is to require and facilitate transfers of federal prisoners to State hands—not to protect murderers from just punishment just because they are serving a federal life sentence. The canon against surplusage is not a get-out-of-execution-free card here, no matter how much Petitioner attempts to treat it as such.

Moreover, the surrounding statutes upon which Petitioner relies aid Respondent, not Petitioner. Section 3621 of Title 18 provides that federal prisoners "shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed, or until earlier released for satisfactory behavior pursuant to the provisions of section 3624." Section 3624 of Title 18 provides that a prisoner "shall" be released when his term of imprisonment expires.

Section 3622 of Title 18—enacted simultaneously with § 3623—permits exceptions to §§ 3621 and 3624, providing that the BOP "*may* [temporarily] release" a prisoner "if such release otherwise appears to be consistent with the public interest." (Emphasis added). Section 3623 provides another exception to §§ 3621 and 3624, *mandating* release where its requirements are satisfied. This contrast in back-to-back statutes—one using "may" (Section 3622) and the next using "shall"—demonstrates that Congress plainly intended for § 3623 to operate robustly in favor of transfers to state authorities. *See Alabama v. Bozeman*, 533 U.S. 146, 153 (2001) ("the word 'shall' is ordinarily the language of command.").

28

Finally, even if "prior to his transfer" meant the statute could not apply to an inmate serving a life sentence, this *still* would not prohibit the transfer. It would just mean that § 3623 does not cover inmates with life sentences, and that transfers of those persons would be in the complete discretion of the Attorney General, as they were originally. *See Ponzi v. Fessenden*, 258 U.S. 254, 261-62 (1922) (holding that there was "no doubt" prior to § 3623 and its predecessors, when there was no "express authority authorizing the transfer of a federal prisoner to state court," that "the power and discretion to practice the comity in such matters … is vested" in the Attorney General); *id*. at 259-60 (federalism requires "a spirit of reciprocal comity and mutual assistance" in such matters, and a defendant "should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other"); *id*. 260 (a defendant "may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it"). There is nothing in § 3623 stripping the Attorney General of this authority or prohibiting the Attorney General from acting.

Petitioner has failed to demonstrate that the district court's denial of this claim is debatable. He is not entitled to a COA.

## PART ONE "COA GROUND II"

**PETITIONER WAIVED ANY ARGUMENT THAT FEDERAL COURTS MUST REVIEW BOP "PUBLIC INTEREST" DETERMINATIONS. FURTHER, PETITIONER'S CLAIM RESTS ON A MISREADING OF *LOPER BRIGHT* AND THE DISTRICT COURT'S DECISION.**

In Petitioner's second request for a COA, he argues the district court's recognition that it is the prerogative of the United States to relinquish primary jurisdiction is contrary to the Supreme Court's decision last year in *Loper Bright*. Petitioner waived this argument by not making it properly below. Moreover, although *Loper Bright* permits courts to account for executive guidance, the district court independently interpreted § 3623. This claim lacks merit.[7]

Petitioner has expressly abandoned any challenge to the "public interest" requirement. (Doc. 29-1 at 44). Yet, he still complains that the district court deferred to the BOP's current public interest determination. (Doc. 29-1 at 31-35). This contradiction is nonsensical. Moreover, § 3623 *requires* the BOP to make the public interest determination. 18 U.S.C. § 3623(3). This claim lacks merit.

Perhaps Petitioner intended this claim to address the magistrate judge's discussion of *Loper Bright* in the context of internal BOP guidance indicating a "transfer should occur within a reasonable period of time before the inmate's release

---

[7] This claim also suffers from the infirmities noted in subsections A and B of Part One ("COA Ground I"), *supra*.

from the Federal sentence, ordinarily within the last 90 days." ROA 40-43; *see* ROA 20-23 (Petitioner arguing, in the context of his *ultra vires* claim, for deference to the BOP's guidance); *see also* ROA 45 (Attorney General Bondi: "Consistent with BOP's internal policy guidance, the public interest is typically not served by transferring an inmate to state custody before a federal sentence is fully served."). If so, his claim still fails.

Petitioner did not cite *Loper Bright* in his habeas petition or make an argument similar to the one he raises now until his objection to the magistrate judge's report and recommendation. ROA 626-28. Petitioner has waived Part One "COA Ground II." *See Garfinkle*, 261 F.3d at 1031 ("[T]heories raised for the first time in objections to the magistrate judge's report are deemed waived.").

In addition, Petitioner misunderstands *Loper Bright*, a decision that had nothing to do with habeas. In *Loper Bright*, the Supreme Court addressed the extent of deference federal courts must give to federal agencies' interpretations of ambiguous statutes "even when a reviewing court reads the statute differently." 603 U.S. at 378. There, dealing with the question of whether federal courts must defer to executive agencies' interpretations of ambiguous statutes,[8] the Court held that the Administrative Procedures Act (5 U.S.C. § 706) ("APA") explicitly requires courts

---

[8] As explained above, § 3623 is not ambiguous.

to "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 603 U.S. at 391 (quoting 5 U.S.C. § 706).[9]

Petitioner ignores that § 3623 is expressly exempted from the APA. 18 U.S.C. § 3625. Further, *Loper Bright* did not address the constitutionality of judicial deference to federal agencies. Although the Court referred to Article III of the constitution as the source of federal courts' authority to interpret federal law, it did not hold that deference to agency interpretations would violate the constitution. *See id*. at 413-16 (Thomas, J., concurring) (opining that such deference would violate the separation of powers). *Loper Bright* is largely irrelevant to this case.

But even ignoring that, *Loper Bright* only matters if the district court deferred to BOP's interpretation of "prior to his release" as opposed to independently interpreting that phrase (with or without respect for BOP's view). Petitioner's reliance on *Loper Bright* suggests deference to BOP would be inappropriate yet Petitioner criticizes the district court for *not* giving controlling weight to BOP's assertion that "prior to his release" means that a "transfer should occur within a reasonable period of time before the inmate's release from the Federal sentence, ordinarily within the last 90 days." (Doc. 29-1 at 42). That is, Petitioner argues that

---

[9] *Loper Bright* does, however, permit federal courts to give "due respect [to] the views of the Executive Branch." *Id*. at 403.

*Loper Bright* required the district court to defer to the BOP guidance, but *Loper Bright* held—under the circumstances in that case—that deference is *inappropriate*. Consistent with a broad reading of *Loper Bright*, the magistrate judge believed the court had "an independent duty . . . to exercise its own judgment when interpreting statutory text." ROA 596-97. The district court also refused to defer to BOP's guidance, finding it inapplicable to life sentences and noting that BOP has the discretion to depart from its guidance statement. ROA 641. *Loper Bright* is inapplicable. The district court independently construed § 3623.

Finally, the linchpin of the guidance is "reasonable[ness]"—and *not* the "last 90 days," which is prefaced by the adverb "ordinarily." ROA 38. It may be "ordinarily" (or "typically") reasonable for the federal government to wait until 90 days before an inmate's scheduled release to transfer him, but the guidance's phrasing indicates that there will be times where this is unreasonable, or it is reasonable to do otherwise. This is one of those times. To its immense credit, the United States now recognizes that woodenly following its internal policy "where a state is ready to carry out a lawful death sentence grossly undermines the public interest." ROA 45-46.

In any event, it is unclear on what basis this guidance would control here, even if it were phrased in a more absolute way. There is no express statutory provision authorizing BOP to promulgate rules for the transfer under § 3623, and even if there

33

were, the BOP's interpretation could not be considered valid unless it was a permissible and reasonable construction of the statute. *See, e.g.*, *Reno v. Koray*, 515 U.S. 50, 61 (1995) (BOP program statement must be a permissible construction of the statute to receive any deference). The BOP cannot alter the timing by regulation because of the canon *casus omissus pro omisso habendus est*—"a statute should not be read to include matter it does not include." *Env't Integrity Project v. U.S. Env't Prot. Agency*, 969 F.3d 529, 541 (5th Cir. 2020). Put another way, "[n]othing is to be added to what the text states or reasonably implies." *Williams v. Lakeview Loan Servicing LLC*, 509 F. Supp. 3d 676, 680 (S.D. Tex. 2020) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 93 (West 2012)).

For all of the foregoing reasons, Petitioner's Part One "COA Ground II" must be denied.

## "PART TWO COUNT TWO"

### THE DISTRICT COURT'S REJECTION OF PETITIONER'S *ULTRA VIRES* CLAIM WAS WITHIN ITS DISCRETION.

Petitioner next claims his transfer was an *ultra vires* violation of § 3623. This claim fails for all the reasons set forth in Part One "COA Ground I". To begin, a number of courts have analyzed an inmate's *ultra vires* claims not as separate from habeas, but rather as included within the habeas analysis. *See, e.g.*, *Delgado–Reynua*

*v. Gonzales*, 450 F.3d 596, 598 (5th Cir. 2006) ("Delgado–Reynua filed a petition for writ of habeas corpus … challenging the BIA's order of removal and arguing that the BIA acted *ultra vires* …."); *Vandagriff v. Fed. Bureau of Prisons*, No. 10-225-ART, 2010 WL 4867640, at *2 (E.D. Ky. Nov. 23, 2010) (unpublished) ("Because Vandagriff cannot show that the BOP's decision was arbitrary and capricious or otherwise *ultra vires*, his habeas petition must be dismissed."); *Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1074 (N.D. Cal. 2004) ("Petitioner filed this petition for writ of habeas corpus alleging … that the regulation is *ultra vires* because it exceeds the authority bestowed upon [ICE] by Congress ….").

An executive agency is subject to *ultra vires* remedies only when it "plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory[.]'" *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 763 (D.C. Cir. 2022) (citation omitted); *see also Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 109 (1902) (a "clear mistake of law" is required). "As a result, *ultra vires* claims are confined to extreme agency error where the agency has stepped so plainly beyond the bounds of its statutory authority, or acted so clearly in defiance of it, as to warrant the immediate intervention of an equity court." *Fed. Express Corp.*, 39 F.4th at 764 (cleaned up and citations omitted).

As shown in Part One "COA Ground I", habeas relief is unavailable for many reasons, including the fact that BOP did not clearly act in defiance of § 3623. Rather, it complied with § 3623's mandatory language. Petitioner is not entitled to relief.

### "PART TWO COUNT FOUR"

### THE STATE DID NOT WAIVE THE RIGHT TO EXECUTE ITS LAWFUL DEATH SENTENCE.

For his final ground, Petitioner claims the State waived its right to execute him by honoring his request to be held in the physical custody of the United States while the State vigorously defended the legality of his conviction and death sentence. Petitioner's claim is utterly unsupported by fact or law.

Petitioner argues his transfer violated due process because "Oklahoma willfully showed no interest in trying to return [him] to Oklahoma from 2006 until 2022[.]" (Doc. 29-1 at 54-56). In contrast, the magistrate judge "affirm[ed] that the state has at all times retained its sovereign right to enforce the lawful sentence imposed upon Petitioner." ROA 604. The district court noted that Petitioner provided no authority for his position, and the court itself found none. ROA 643. However, analogous authority requires any such waiver to be "deliberate and intentional." ROA 643 (citing *Ponzi*, 258 U.S. at 260).

As a preliminary matter, this claim fails for all the reasons set forth in Part One ("COA Ground I"). Further, it ignores that Petitioner was returned to federal custody after his resentencing in Oklahoma at his own request and that Oklahoma

had no reason to "acquire primary or physical custody" of Petitioner until his execution was imminent. ROA 24. Because Petitioner orchestrated the circumstances of which he is now complaining, the doctrine of invited error (among others) precludes habeas relief. *See Parker v. Champion*, 148 F.3d 1219, 1221 (10th Cir. 1998).

The claim is also patently frivolous. Petitioner alleges that "Oklahoma willfully showed no interest in the return of Plaintiff from 2006 until 2022" by "any … affirmative action." ROA 24. Yet, Petitioner acknowledges that Oklahoma lodged a detainer with federal authorities in 2006. (Doc. 29-1 at 12-13). And during that 16-year stretch, attorneys for the State of Oklahoma—including attorneys on this brief—spent countless hours actively litigating against Petitioner's numerous attempts to overturn his state conviction and avoid his death sentence, in state and federal court. And Oklahoma indisputably requested Petitioner's transfer as soon as his original execution date was set in 2022. Even Petitioner admits that "[a]fter the federal district judge's execution protocol and method of execution ruling, the OCCA scheduled Mr. Hanson's execution." ROA 15. This is the exact opposite of showing gross negligence or a complete lack of interest in Petitioner.

Petitioner relies on *Blango v. Thornburgh*, 942 F.2d 1487, 1491 (10th Cir. 1991). (Doc. 29-1 at 55). But *Blango* held, as did the district court here, that a sovereign waives jurisdiction "only when its action was 'so affirmatively wrong or

37

its inaction so grossly negligent that it would be unequivocally inconsistent with 'fundamental principles of liberty and justice' for that sovereign to retain jurisdiction." 942 F.2d at 1491 (quoting *Piper v. Estelle*, 485 F.2d 245, 246 (5th Cir. 1973)). *Accord United States v. Barfield*, 396 F.3d 1144, 1149 (11th Cir. 2005) (holding eight-year delay in enforcing sentence did not violate due process); *Piper*, 485 F.2d at 246 (state's delay of two years to file detainer did not violate due process). Petitioner has failed to satisfy that standard:

> Oklahoma has taken step after step, filing motion after motion, appealing ruling after ruling and pressing forward through federal courts, state courts, habeas challenges, execution protocol challenges, McGirt claims, and administrative hurdles. All to uphold the lawful sentence pronounced by an Oklahoma jury on Oklahoma soil for an Oklahoma crime. This is a sovereign state, standing over decades, asserting its right and duty to enforce its criminal judgments.

ROA 603. Petitioner's Part One Claim Four should be denied.

## <u>CONCLUSION</u>

The State has a "strong interest in enforcing its criminal judgments." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). After losing every attempt to overturn his conviction and sentence, and his challenge to the State's execution protocol, Petitioner has raised this last-ditch effort to avoid execution. Petitioner's claims are improper for a number of reasons, including that they lack merit. Oklahoma Respondents respectfully ask this Court to deny a COA, affirm the district court's

decision, and allow justice for Mary Bowles (and Jerald Thurman) to finally be served.

Respectfully Submitted,

*s/ Jennifer Crabb*
GARRY M. GASKINS, II, OBA 20212
 *Solicitor General*
ZACH WEST, OBA 30768
 *Director of Special Litigation*


JENNIFER CRABB, OBA 20546
MICHEL A. TRAPASSO, OBA 35298
*Assistant Attorneys General*

OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Garry.Gaskins@oag.ok.gov
Zach.West@oag.ok.gov
Jennifer.Crabb@oag.ok.gov
Michel.Trapasso@oag.ok.gov

*Counsel for Oklahoma Respondents*

## CERTIFICATE OF COMPLIANCE

**X**      This response complies with the typeface requirements of Fed. R. App. P. 32 because it was prepared in a proportionally spaced font (Times New Roman, 14-point) using Microsoft Word 2016. Given the hybrid nature of Petitioner's combined motion and opening brief, it is unclear which word limitation applies to this response. However, this response complies with the type-volume limitation set forth in Fed. R. App. P. 32(A)(7), in that it contains 9,582 words.

s/ JENNIFER CRABB

## CERTIFICATE OF SERVICE

**X**      I hereby certify that a copy of this Objection was electronically filed with the Clerk of this Court on June 4, 2025, and was served via the Court's CM/ECF filing system on the following registrants:

Hunter_Labovitz@fd.org
Tom_Hird@fd.org

s/ JENNIFER CRABB

## CERTIFICATE OF DIGITAL SUBMISSION

This is to certify that:

1. All required redactions have been made and, with the exception of those redactions, every document submitted in Digital Form or scanned PDF form is an exact copy of the document filed with the Clerk;

2. The digital submissions have been scanned for viruses with Symantec Endpoint Protection, Updated 6/4/25, and according to said program, are free of viruses.

s/ JENNIFER CRABB